Mendenhall *et al. v.* Stewart, Executrix.

---

MENDENHALL ET AL. *v.* STEWART, EXECUTRIX.

[No. 2,144.    Filed October 13, 1897.]

CONSPIRACY.—*Conspirators Bound by Acts and Declarations of Co-Conspirators.*—Where there is a conspiracy between two or more persons to do an unlawful act, each person engaged in the conspiracy is liable for the acts and declarations of the others done and made in furtherance of the conspiracy. *p. 265.*

FRAUD.—*False Statement in Letter of Credit.*—Where a person falsely represents in a letter of credit that the party seeking credit is worth a certain sum of money over and above his indebtedness, and thereby induces an extension of credit, a fraudulent purpose will be imputed to the person making the statement, although he believed such statement to be true. *p. 267.*

SAME.—*Letter of Credit.—False Attestation of Signature.*—Where a person subscribes his name to a letter of credit attesting a signature to such letter, knowing the same to be false, and knowing the statements therein, representing the person desiring credit to be worth a certain sum of money, to be false, and by reason of such letter and attestation a stock of goods was sold to the person named in the letter, recovery may be had against the subscribing witness for the price of the goods so sold. *pp. 267–269.*

INSTRUCTION.—*Credibility of Witness.*—An instruction that the jury might, in determining the credibility of a witness, consider the interest, if any, such witness might have in the result of the trial, is not erroneous when taken in connection with another instruction given to the effect that no testimony should be disregarded because the witness was a party, but that such testimony should be considered along with all of the evidence in the case fully and impartially. *pp. 270, 271.*

SAME.—*Incomplete Instruction.*—An instruction is not erroneous if it is correct as far as it goes, and is completed by other instructions. *p. 272.*

FRAUD.—*Conspiracy.—Letter of Credit.*—Where three persons conspired together to obtain credit for one of the number by writing a false letter of credit, conspiracy may be shown as a matter of aggravation, but obtaining the credit by writing such false letter is the gist of the action, and judgment may be rendered against any one or more of the defendants therefor. *pp. 272, 273.*

Mendenhall *et al. v.* Stewart, Executrix.

From the Wayne Circuit Court.  *Affirmed.*

*Gavin, Coffin & Davis, W. A. Brown, James Brown* and *W. O. Barnard,* for appellants.

*Albert J. Beveridge, George C. Calvert, M. E. Forkner* and *T. J. Study,* for appellee.

ROBINSON, J.—The complaint in this action avers, in substance, that on and prior to the 2d day of June, 1893, appellant Eilar was insolvent, and desired to purchase a stock of drugs from appellee, and being unable to purchase said stock on account of his insolvency, the appellants, Mendenhall, Hoover, and Eilar conspired together with the intent to fraudulently procure from appellee on the credit of Eilar, said goods by means of false representations as to the credit of Eilar and Hoover, and by uttering and delivering to appellee a false letter of credit as to the solvency and credit of Hoover and Eilar; that pursuant to said conspiracy, appellants caused to be uttered to appellee a false letter of credit purporting to be executed by Hoover and witnessed by Mendenhall, in which it was falsely stated that said Hoover was worth three thousand dollars above his indebtedness, and in which he purported to guarantee the payment of all bills of goods Eilar might purchase of appellee to the amount of fifteen hundred dollars; that appellee being ignorant of the insolvency of Eilar, and relying upon said letter as to the solvency of Hoover, and relying upon said letter as genuine, and especially being assured thereof by said Mendenhall witnessing the same, sold and delivered to Eilar a bill of goods; that said letter of credit was false; that Hoover did not execute the same, and that Mendenhall did not see him execute it, but attested the same without knowing whether it was genuine or not; that the representations in said

letter as to the solvency of Hoover were untrue; that Hoover was worth nothing above his indebtedness, and that all his property was at the time incumbered for more than its value, which facts Mendenhall and Eilar knew, but of which appellee was ignorant; that shortly after said sale of goods, and before the bills for the same became due, Eilar mortgaged and assigned all his property, including said goods, to other parties, and is wholly insolvent; that said goods were sold on the faith of the representations in said letter, and that they would not have been sold but for said letter and the attestation thereon by said Mendenhall. The letter of credit and a bill of particulars are filed with the complaint as exhibits.

Separate demurrers to the complaint by each of the appellants were overruled, and the cause was put at issue by the general denial. A verdict was returned in appellee's favor, upon which judgment was rendered over appellant, Mendenhall's motion for a new trial.

The overruling of the demurrers to the complaint, and overruling the motion for a new trial are assigned as errors.

In support of their position, that the complaint is insufficient, appellants' counsel cite *Cook* v. *Churchman,* 104 Ind. 141, and *Severinghaus* v. *Beckman,* 9 Ind. App. 388. In the case of *Cook* v. *Churchman, supra,* it was sought to hold Churchman on an oral statement of his that Thomas Cottrell was a man of property, and that under his guaranty the appellants would be perfectly safe in selling goods to Cottrell's son. It was held that under that section of our statute of frauds which provides that, "No action shall be maintained to charge any person by reason of any representation made concerning the character, conduct, credit, ability, trade, or dealings of any other person, unless such representa-

tion be made in writing and signed by the party to be charged thereby, or by some person thereunto by him legally authorized." (Section 6634, Burns' R. S. 1894), that Churchman was not liable on the oral representations made. But in that case the court uses the following language: "If a case should arise in which it appeared that two or more persons entered into a conspiracy, the common purpose of which was to defraud another of his money or goods, or that some were engaged to assist others in accomplishing a fraudulent or illegal act, then whatever shams or tricks may appear to have been resorted to, the court will deal with the case as the facts may require." See *Breedlove* v. *Bundy*, 96 Ind. 319.

In *Severinghaus* v. *Beckman, supra*, it was alleged in the complaint that appellant and another had maliciously conspired and agreed with each other to slander and defame appellee by accusing her of the crime of perjury, and that in pursuance of such conspiracy, the appellant spoke of the appellee certain false and defamatory words. It was held in that case that "where a conspiracy is alleged to have been formed to commit an act which, if done by one alone, would be an actionable wrong, or whether the conspiracy charged is not, by law, a crime, then the conspiracy is not the *gravamen* of the action, and the tort, for the accomplishment of which it was formed, must be well pleaded before the complaint can repel a demurrer."

It is well settled that if there is a conspiracy between two or more persons, each person engaged in the conspiracy is liable for the acts and declarations of the others done and made in furtherance of the conspiracy. *Boaz* v. *Tate*, 43 Ind. 60; *Breedlove* v. *Bundy, supra; Wolfe* v. *Pugh*, 101 Ind. 293; *Hodgin* v. *Bryant*, 114 Ind. 401.

In the case of *Kirkpatrick* v. *Reeves*, 121 Ind. 280, the

court said: "An unqualified statement that a fact exists, made for the purpose of inducing another to act upon it, implies that the person who makes it knows it to exist, and speaks from his own knowledge. If the fact does not exist, and the defendant states of his own knowledge that it does, and induces another to act upon his statement, the law will impute to him a fraudulent purpose."

While the complaint in the case at bar charges a conspiracy, yet the cause of action is what is alleged to have been done pursuant to the alleged conspiracy. The gist of the cause of action is obtaining credit of appellee for Eilar and obtaining for Eilar certain goods by writing to appellee the alleged false letter of credit or guaranty. It appears that at the time the letter was presented to appellee it had not been signed by Hoover, although his name was attached to the letter and the signature witnessed by Mendenhall. The witnessing by Mendenhall of the signature made none of the statements in the letter his statements. His liability arises from attesting a signature that had never been made, and thus empowering a person to purchase goods upon a letter that had never been authorized. The complaint alleges that Mendenhall attested the signature of Hoover when he knew that Hoover had not signed the letter of credit or guaranty, and when he knew that the statements in the letter were false. It cannot be said that this is in effect an oral representation of the solvency of Eilar. It is not sought to recover for any loss resulting from the fraudulent representations as to the solvency of Eilar, but appellee seeks in her complaint to recover the price of the stock of drugs obtained from her by fraud.

The only representation made by Mendenhall was by means of the act of subscribing his name as a

witness to the signature of Hoover. The legal effect of Mendenhall's act was that he had seen Hoover sign his name, and at the request of some one, presumably Hoover, he had signed the letter as attesting witness. 1 Greenleaf Ev. (15th ed), 569, 569a. By that act, under the allegations of the complaint, he represented as facts what he knew to be untrue. It is further alleged that at the time of such alleged attestation he knew that the letter was to be used by Eilar for the purpose of obtaining goods from appellee. Had he stated the facts as they really were, the loss to appellee would not have resulted, but by a misrepresentation of the facts the loss occurred.

It cannot be said that the statement made in the letter of credit, that Hoover was worth a certain amount over and above his indebtedness, was a mere statement of his opinion upon which appellee had no right to rely. As set out in the letter, it is an unqualified statement of the existence of a fact, and it implies that the person who made it knew it to exist, and that he spoke from his own knowledge. If the fact does not exist, a fraudulent purpose will be imputed to the party if he states of his own knowledge that it does and induces another to act upon his statement. *Kirkpatrick* v. *Reeves, supra; Furnas* v. *Friday,* 102 Ind. 129; *Bethell* v. *Bethell,* 92 Ind. 318.

And it has been held that in an action for false representation it is immaterial whether the party made the representations on his personal knowledge or made them on information derived from others. *Fisher* v. *Mellen,* 103 Mass. 503. And that a person may be liable for fraudulent representations although he believed his statements to be true. *Chatham Furnace Co.* v. *Moffatt,* 147 Mass. 403, 18 N. E. 168; see, also, *Litchfield* v. *Hutchinson,* 117 Mass. 195.

In *Kountze* v. *Kennedy,* 147 N. Y. 124, 41 N. E. 414, it

is said: "It has been held that one who falsely asserts a material fact susceptible of accurate knowledge to be true of his own knowledge, and thereby induces another to act upon the fact represented to his prejudice commits a fraud which will sustain an action for deceit."

In *Second National Bank* v. *Curtiss*, 37 N. Y. Supp. 1028, an action was brought to recover damages for false representations made by appellee's testator by his signing as a witness an assignment to appellant of certain shares of railroad stock. One Green was president of the railroad company, the appellee's testator was its treasurer, and Allen was its transfer agent. At expectation of being away, Green signed some certificates of stock in blank and left them with Allen. At that time one Westfall owned fifty shares of the stock, and held a certificate for the same. Allen desiring to procure a loan from appellant took one of the blank certificates signed by Green and filled it out to correspond with Westfall's real certificate. After imprinting the company's seal, he wrote his own signature and that of the company's treasurer, and then wrote Westfall's name as a signature to the blank assignment printed on the back of the certificate. He then applied to the plaintiff for a loan to be secured by this fifty shares of stock, but was told by plaintiff to have the assignment on the back of the certificate witnessed by some person whose signature was known to the plaintiff. Allen procured one Murray and the defendant's testator to sign the assignment as witnesses to the same, saying that he was going to use the stock for the purpose of a loan. The plaintiff then made the loan, relying on the signature of defendant's testator as such witness. The complaint alleges that the attestation of defendant's testator to the signature of Westfall to the assignment was wrongful and fraud-

ulent, and was made by the defendant's testator with the intent or knowledge that it should or would be relied on by the assignee of the certificate. In the opinion of the court holding the defendant's testator liable for the amount loaned, it was said: "The only representation made by the defendant's testator was by means of the act of subscribing his name as a witness to the assignment of the stock. That act was a statement and representation by the testator, in effect, that the signature to the assignment was made by Westfall in the testator's presence, or acknowledged by Westfall in the testator's absence to be his (Westfall's) signature, and that the testator thereupon, at Westfall's request, wrote his name as witness thereto. * * * Regarding this act as a statement or representation of the facts we have referred to, there can be no doubt but that the conclusion of fraud, so far as it was essential to support the judgment, necessarily followed. The testator stated and represented as facts what he knew to be untrue. * * * The testator was informed and knew at the time he signed his name as a witness to the assignment that the stock was to be used by Allen to secure a loan of money, and he understood, therefore, that his signature as a witness would be relied upon by the party making the loan as establishing the actual execution of the assignment. Nevertheless, instead of stating the facts truly as they occurred, which would have avoided any injury to the plaintiff, he wholly misrepresented the facts, and thereby brought about the injury and damage complained of in this case."

The complaint in the case at bar is drawn on the theory that some person other than Hoover signed Hoover's name to the letter of credit or guaranty, and that the name was signed without Hoover's knowledge or consent; that Mendenhall, knowing that

Hoover had not signed the letter, and that the letter was to be used by Eilar in obtaining goods from appellee, attested a signature that was never authorized, thus assuring appellee that he had seen Hoover·sign the letter thus empowering Eilar, who knew all the facts, to obtain from appellee the stock of drugs. We think the demurrer to the complaint was properly overruled.

Much that has been said concerning the complaint will apply to many of the instructions given, to which appellants have objected. The correctness of the instructions given is questioned only by the appellant, Mendenhall, who filed a motion for a new trial. The only exceptions taken to instructions given, and to the court's refusal to give those requested, were taken by appellant Mendenhall.

In the first instruction the court told the jury that, "In determining the credibility of a witness you may consider the interest, if any shown, which he may have in the result of the trial, the probability of the truthfulness of his testimony, and all the other things which ordinarily affect the truthfulness of evidence."

It is argued that this substatntially tells the jury that being interested in the event of the trial is one of the things that ordinarily affects the truthfulness of evidence. While it is true that it cannot be said as a matter of law that because a witness may be interested in the result of the litigation less weight shall be given to his testimony, yet this instruction is not directed to any particular witness on either side, and tells the jury, in effect, that being interested in the event of the suit was a matter they might consider in determining the truthfulness of evidence. The jury were not told that the truthfulness of evidence depended upon whether or not the witness was interested. The weight that any testimony has, depends

Mendenhall *et al. v.* Stewart, Executrix.

upon the probability of its truthfulness or untruthfulness. Besides, this instruction must be taken in connection with all the other instructions. In the twenty-eighth instruction the jury were told that "in passing upon the weight of testimony you have the right to consider the interest, if any shown by the evidence, a witness may have in the result of the suit, his relationship, if any shown to any party to the suit. * * * You have no right to disregard the testimony of a party to the suit simply because he is a party, but you should consider such testimony along with all the evidence in the case fully and impartially."

In the case of *Dodd* v. *Moore*, 91 Ind. 525, the instruction held objectionable said, "The weight which you give the testimony of a witness depends upon the interest which such witness may have in the result of your verdict." But, in that case, the court said: "The jury have the right, in all cases, in weighing and settling conflicts in testimony, to consider the interest which the witnesses may have in the result of the litigation; and it is proper to instruct them that they may exercise that right." See *Hess* v. *Lowrey*, 122 Ind. 225.

Instruction number two reads as follows: "When two or more persons combine and conspire by false representations, or other fraudulent acts, to cheat and defraud another, all of said persons participating to aid said fraud are liable to the person defrauded, whether they received any benefit from the fraud or not." It is objected to this instruction that it is a vague, indefinite, abstract proposition, and that the expression "by fraudulent representations or other fraudulent acts," leaves the jury to judge of what is a fraudulent act. The instruction is a correct statement of a proposition of law. The objection that the instruction is incomplete is met by the fact that the

court gave, at appellant Mendenhall's request, two other instructions upon the points to which appellants direct their objection to this instruction.    It is well settled that an instruction is not erroneous if it is correct as far as it goes, and other instructions complete it. *Western Union Tel. Co.* v. *Buskirk*, 107 Ind. 549.

That part of instruction number three which is assailed reads as follows: "So in the present case, if you believe from the testimony that David M. Hoover told Valley Mendenhall and Eilar that they might use his name upon a paper exactly like a former paper to a Chicago house, and containing the same number of names as guarantors that the former paper contained (if such former paper was ever given), and said Mendenhall signed said Hoover's name to a different paper unlike the former paper for the different amount and with no other names upon it except Hoover's, and if said Mendenhall knew at the time that he signed said Hoover's name that said letter of credit was for the purpose of getting goods for said Eilar, and the letter was so used and the goods got upon it, then Mendenhall is liable to the plaintiff for the value of the goods."

It is argued that this instruction seeks to hold Mendenhall liable upon a different cause of action from that alleged in the complaint.

As we have before said, that while the complaint charges a conspiracy, yet the cause of action is what is alleged to have been done pursuant to the alleged conspiracy.    Obtaining credit for Eilar and obtaining for him certain goods by writing the alleged false letter of credit or guaranty is the gist of the action.    The court in another instruction correctly told the jury, that if the evidence warranted it they might find a verdict against any one or more of the defendants and in favor of the others.    The tort growing out of the conspiracy gave appellee her right of action.    The con-

spiracy may be shown as a matter of aggravation, but it is not the foundation of the action. *Dorsey Machine Co.* v. *McCaffrey,* 139 Ind. 545, 552.

In the twenty-first instruction the court told the jury that, "If the defendant Mendenhall wrote the name of David Hoover on this letter of credit as maker, it was his duty to know that it was such a paper as Hoover had authorized; and if it was not in fact such a one as he authorized, and Mendenhall afterwards attested it for the purpose of assisting Eilar in obtaining credit thereon, both knowing all the facts, both would be liable, though Mendenhall may have thought he had authority to execute it. He who uses another's name must be held to know whether he has authority, and if he uses it without authority in fact to the injury of another, he must be held liable for the injury, no matter what his intention may be in the matter." This instruction correctly states the law. If a person, for the fraudulent purpose of inducing another to part with money or property, makes a statement of a fact which is not true, and the person to whom the statement is made relies upon it, and parts with the property, the party making such statement is guilty of fraud, even though he may not have known at the time that the statement was false. *Ingalls* v. *Miller,* 121 Ind. 188; *Kirkpatrick* v. *Reeves, supra.* The party making the statement is bound to know whether it is true or not, and it is not material what his intentions may have been at the time.

Instruction twenty-seven is questioned on the ground that it is not applicable to the evidence, and that an assumed statement of the evidence is given. The instruction is quite lengthy, and we deem it unnecessary to set it out in full. Suffice it to say, we have carefully considered the evidence and find nothing in

the instruction that is not applicable thereto.  The instruction is plain, contains no assumed statements of the evidence, and was fair to appellant Mendenhall. There was a sharp conflict in much of the evidence, but the instruction properly left it with the jury to determine where the preponderance lay.

A part of the eighth instruction requested by appellant Mendenhall correctly states the law, but the same had been given in other instructions given by the court.  In support of the remaining part of the instruction, appellant's counsel cited us no authorities, and we know of none.

Counsel state that instructions numbered twelve and fifteen requested by appellant Mendenhall, should have been given, but no reasons have been assigned, and no error is pointed out in the court's refusal to give them.  That part of each of the instructions applicable to the evidence was included in the instructions given to the jury.

The court refused to give the thirty-second instruction requested by appellant Mendenhall.  In the sixth, seventh, and eighth instructions given by the court to the jury they were given the definition of a conspiracy, and what importance should be attached to it in a case like that at bar, and were told that Mendenhall would not be a party to the alleged conspiracy unless he entertained, in common with one or both of the other defendants, the design fraudulently to procure from the appellee for Eilar the goods described in the complaint by means of the representations therein set forth.  These instructions fully cover the statements set out in the thirty-second instruction.

The instructions given by the court to the jury were very lengthy, and covered every phase of the case.  Taking them as a whole, they present the case fully and fairly.  The statement of the appellant's counsel that

many of the instructions were unfair to Mendenhall, the only person who complains of the instructions in this court, is not borne out by the facts.

We have carefully considered each instruction given and refused, and can but conclude that in so far as the instructions are concerned, the appellant Mendenhall has no sufficient cause for a reversal of the judgment.

The evidence on many of the material questions in the case is very conflicting, and this court cannot weigh it to determine where the preponderance lies. There was evidence to which the instructions given were applicable, and after a careful consideration of all the evidence we think the verdict of the jury is fully sustained by the evidence.

Judgment affirmed.

Comstock, J., and Henley, J., took no part in this decision.