## DUNCAN ELECTRIC & ICE CO. v. DICKEY et al.

No. 8159—Opinion Filed April 24, 1919.

(180 Pac. 703.)

(Syllabus.)

**Principal and Agent—Agent's Unauthorized Contract—Personal Liability.**

One who uses another's name must know whether he has authority, and, if he uses it without authority in contracting an indebtedness, he must be held personally liable for the indebtedness, no matter what his intentions may be in the matter.

Error from County Court, Stephens County; J. W. Marshall, Judge.

Action by J. H. Dickey and E. Medford, doing business under the firm name and style of the Central Electric Company, against the Duncan Electric & Ice Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

Hainer, Burns & Toney, for plaintiff in error.

Womack & Brown, for defendants in error.

PITCHFORD, J. This action was commenced in the county court of Stephens county, Okla., wherein the defendants in error filed their petition against the plaintiff in error, seeking the recovery of the sum of $165 and interest thereon for certain work done by the former for the latter. When the cause came on for trial, a jury was waived, and the case tried to the court. After hearing the evidence and argument of counsel, among other things the court found as follows:

"That the principal allegations of the plaintiff herein are true. The court finds that the plaintiff herein is a partnership composed of J. H. Dickey, Jr. and E. Medford, and that the defendant, the Duncan Electric & Ice Company, is a corporation, organized under the laws of the state of Oklahoma. The court further finds that on or about the 18th day of March, 1912, the

plaintiff, at the special instance and request of the defendant, performed services and labor, and furnished supplies to the defendant of the value of $165; that no part of the sum has been paid, and the court further finds that the said defendant, the Duncan Electric & Ice Company is indebted to the plaintiff the Central Electric Company in the sum of $165, with interest thereon from the 18th day of March, 1912, at the rate of 6 per cent. per annum until paid."

The parties will be designated as they appeared in the court below. The specifications of error relied on are: (1) That the trial court erred in rendering judgment against it for the reason that there was not sufficient evidence to support said findings and judgment; (2) that the trial court erred in rendering judgment against it for the reason that the evidence conclusively shows that said decision is contrary to law, to wit, the evidence affirmatively showing that there was no contract existing between it and the defendant in error, either implied or expressed; (3) that the court erred in overruling the motion for a new trial.

It appears from the evidence that the defendants had entered into a contract with the city of Duncan for the purpose of supplying electric current for operating motor for pumping water necessary for the use of said city and the inhabitants thereof. It was further stipulated in the contract that the city of Duncan was to install a new motor for the purpose of pumping the water. The contract was silent as to who should pay for repairs that might be found necessary on the motor. This contract was entered into on the 15th day of February, 1911. Some time during the month of January, 1912, the defendant shipped to the Wesco Supply Company of Ft. Worth, Tex., the motor in question for certain repairs, and a few days thereafter wrote the following letter:

"January 26, 1912.

"Wesco Supply Co., Ft. Worth, Texas—Gentlemen: Some days ago we shipped you to be repaired a 25 H. P. motor, which was sold by the Wesco Supply Co. to the city of Duncan. This motor was shipped in the name of this company, and it is the property of the city, and whose name it should have been shipped. Please let either the city or this company know at once when we may expect this motor back. As you no doubt know, this motor was used to drive a pump which supplies the city with water, and leaves the city without adequate water supply until this is returned, as we have no other means of driving the pump. Return this motor in the name of the city of Dun-

can as quick as possible and send them bill for same.

"Yours very truly,

"Duncan Electric & Ice Co."

Thereafter the following letter was addressed to the Duncan Electric & Ice Co.

"February 1, 1912.

"Duncan Electric & Ice Co., Duncan Okla.—Gentlemen: On the 30th ult., we telephoned you regarding the motor which you had forwarded to us and which you requested us to turn over to some reliable repair man for repairs. As we advised you at the time we telephoned you, the name plate has gone from this motor. The wire with which the coils are wound is a special size and is not carried in stock in Texas, and would have to be purchased direct from the factory. It would be more economical for you if we were able to place the order with the factory for the coils necessary, besides saving much time. It will be necessary for us to know the type and serial number of this motor before anything can be done. If you cannot locate the name plate, please locate the invoice on which this motor was charged to you so that this information can be traced from that. In the meantime, the motor is here in the shop of the Central Electric Co. and nothing can be done to it until the above information is furnished.

"Yours very truly,

"The Wesco Supply Co."

Considerable correspondence then ensued in an attempt to ascertain the information required in the letter just quoted. Finally the information was secured and the necessary repairs were made by the plaintiffs, the Central Electric Co. On the 18th of March, 1912, the plaintiffs shipped the motor to the Duncan Electric & Ice Company, and inclosed the bill therefor. On April 24, 1912, the following letter was written to the defendant by the plaintiffs:

"Ft. Worth, Tex., April 24, 1912.

"Duncan Electric & Ice Co., Duncan Okla.—Gentlemen: On March 18th, we shipped your motor which you had sent the Wesco Co. for repairs, and which they turned over to us. We wound same and sent it back to you. We also sent you bill of lading, together with bill for the rewinding. We have not as yet heard from you, not even receipt of the motor. As our bills are all due in thirty days, and this is now past due, we would appreciate it if you would send us your check to cover the same. Thanking you in advance for your prompt attention, we remain,

"Yours truly,

"Central Electric Co."

It seems that the plaintiffs were unable to obtain response from the defendant, whereupon they sought the good offices of the Wesco Supply Company, in inducing the defendant to pay the amount due for the work performed. The Wesco Supply Company addressed a letter to the defendant, and received thereto the following reply:

"Duncan, Okla., May 24, 1912.

"Wesco Supply Co., Ft. Worth, Texas — Gentlemen: In reply to your 5-22-12, we refer you to our correspondence of 1-22-12 from which we quote: 'This motor was shipped in the name of this company, and it is the property of the city and whose name it should be shipped. Return this motor in name of the city of Duncan as quick as possible, and send them bill for same.' We trust this will be satisfactory reply as we expect the Central Electric Co. to take the matter up with the city.

"Yours,

"Duncan Electric & Ice Co."

After being informed of defendant's contention in the premises, the plaintiffs took the matter up with the city of Duncan, but the city refused to pay the account, claiming to show that the defendant was responsible for the injury to the motor; that it was the duty of the defendant to pay for the repairs, and that the city had not authorized the work done. The plaintiffs then brought this action against the defendant. The evidence tends to show that the motor was shipped to the Wesco Supply Company and this company informed the defendant that the work required could not be done by them, and that it would be necessary to turn the motor over to someone who was prepared to do this kind of work. This seems to have been satisfactory to the defendant. In the letter of February 1st, supra, the defendant was informed that the motor had been turned over to the plaintiffs. It nowhere appears that the plaintiffs were given any information to the effect that the motor was the property of the city, or that the city was expected to pay for the repairs, but received the same as the property of the defendant.

It further appears that the Wesco Supply Company was acting for the defendant in turning the motor over to the plaintiffs, and that the plaintiffs clearly understood the work was to be done for the defendant. After the repairs were completed and the motor shipped to the defendant, it was then known by the latter that the repairs were made, not for the city, but for the defendant company, and that the plaintiffs were looking to the

defendant for the charges made for the work.

When Mr. Dickey, a member of the plaintiff company, was on the witness stand, he testified that the first knowledge he ever had that the motor was not the property of the defendant company was when he read the letter in which the defendant quoted from the letter of January 26, 1912. The defendant knew at the time the motor was returned that the plaintiffs were looking to the defendant for payment, and not only failed to remit, but failed to acknowledge the receipt of the motor, or to disclaim personal liability for the charges for the work. If the defendant claimed to act for the city of Duncan in having the repairs made, the burden of proof when sued was to establish the fact that it acted within the scope of its authority, and had been authorized by the city to have the motor repaired at the expense of the city. There was no effort at the trial on the part of the defendant to establish this fact, but it seems to have defended upon the theory that, having notified the Wesco Supply Company that the motor belonged to the city, and that the bill must be sent to the city, it thereby escaped liability.

When the defendant shipped the motor in the first instance and requested that the bill for the work be sent to the city of Duncan, the defendant was presumed to know whether the city had authorized the shipment, and whether or not the city would be liable for the charges for making the repairs, and if it afterwards appeared that the shipment was not authorized and the charges were not to be paid by the city, then the defendant would be liable to the plaintiffs no matter what the intentions of the defendant might have been in the premises.

It is a well-settled principle of law that one claiming to be an agent of another, if he does not possess authority from the principal therefor, or if he exceeds his authority, will be personally liable to the person with whom he is dealing. People's Bank v. Frick Co., 13 Okla. 179, 73 Pac. 949; McConnell v. Holderman, 24 Okla. 129, 103 Pac. 593; Haupt v. Vint, 68 W. Va. 657, 70 S. E. 702, 34 L. R. A. (N. S.) 518; Mendenhall v. Stewart, 18 Ind. App. 262, 47 N. E. 943. The city of Duncan claimed that the defendant was not acting for the city, that it had no authority to make the contract attempting to bind the city, and that the city was under no obligations to the defendant to pay for the repairs made. We are of the opinion that

.there is abundant evidence to sustain the finding of the trial court.

The judgment of the trial court is therefore affirmed.

All the Justices concur.