KUZMA ET AL. *v.* KACZUR ET UX.

[No. 20,011. Filed February 21, 1966. Rehearing denied March 31, 1966.]

*Mario B. Tomisch* and *Gerald N. Svetanoff*, of Gary, for appellants.

*Barce, Barce & Vann*, of Kentland, for appellees.

BIERLY, J.—This action was commenced by the appellees, hereinafter called plaintiffs, for damages resulting from a conveyance of real estate wherein the plaintiffs allege that they were fraudulently deprived of their interest in the real estate so conveyed.

Issues were joined by pleading paragraphs one (1) and three (3) of plaintiffs' amended complaint and the answer in denial filed by appellants—hereinafter called defendants—in compliance with Rule 1-3 of the Supreme Court.

The issues presented for trial were:

1. What was the interest, if any, of plaintiffs, Gregory Kaczur and Anne Kaczur, in and to the real estate in dispute?

2. If plaintiffs were found to have an interest in the real estate, were they fraudulently deprived of their interest by a conspiracy of defendants?

The cause was tried to the court, a jury having been waived.

As to the first issue above stated the court found:

(1) That plaintiffs and defendant, George Kuzma, were substantially "fifty-fifty" (50-50) owners of the real estate in question; that said real estate was sold to Ford Brown

and Elvira Brown, as bona fide purchasers for value; that as to the second issue, George Kuzma had fraudulently induced plaintiffs to convey their interest in and to said real estate; and as a result defendant, George Kuzma, had fraudulently appropriated as his own plaintiffs' share of said real estate. In all, the court rendered sixteen (16) paragraphs of findings.

Judgment consistent based upon its findings was entered by the court in words and figures, to-wit:

"It is therefore ORDERED, ADJUDGED AND DECREED by the Court that the plaintiffs have and recover of and from the defendant, George Kuzma, the sum of Ten Thousand Dollars ($10,000.00) together with six per cent (6%) interest thereon from September 27, 1955, to date, together with the costs of this action taxed at $——————."

Said judgment was entered on the *18th* day of May, 1962, and subsequently thereto, on June 16, 1962, defendant, George Kuzma, filed a motion for a new trial, the grounds whereof were:

"1. The decision of the court is not sustained by sufficient evidence;
"2. The decision of the court is contrary to law;
"3. The court erred in making a finding of facts in said cause without the same having been requested by the parties as provided by statute and law."

The motion was overruled by the court on February 27, 1963.

On the date of June 16, 1962, defendants filed a motion to strike parts of the findings and judgment of the court, the reasons therefor thus enumerated:

"a. The findings in effect constitute special findings of fact when no motion for such findings were made by any of the parties herein, either parties plaintiff or parties defendant and the same constitute surplusage and are prejudicial to said defendant; (George Kuzma)
"b. That the said judgment other than the part thereof awarding money judgment to plaintiffs is surplusage and is prejudicial to said defendant." (George Kuzma)

This motion was overruled.

Defendants' Assignment of Errors, omitting formal parts, is as follows:

"1. The Court erred in overruling Appellant George Kuzma's motion for a new trial.

"2. The Court erred in its several findings and judgment for appellees.

"3. The Court erred in overruling the motion of Appellant George Kuzma to strike parts of findings and judgment for appellees."

Appellants waive all specifications of error except that the decision of the court is not sustained by sufficient evidence and is contrary to law.

Plaintiffs allege in paragraph one of their amended complaint that on August 27, 1951, they bought from one Bardos, a widower, a parcel of land for the sum of $9,700.00 in Gary, Lake County, Indiana [Plaintiffs' Exhibit A]; that on August 28, 1951, the defendants prepared a warranty deed showing a conveyance of the same real estate by Warranty Deed from plaintiffs to one Betty Coonrod, an unmarried adult, for a consideration of $100.00 [Exhibit B]; that on the same date Betty Coonrod, by a Deed in Trust, for a consideration of less than $100.00, conveyed said real estate to Gregory Kaczur; as Trustee, and Anne Kaczur, as Successor in Trust [Exhibit C].

Thence, on August 24, 1953, the defendant, George Kuzma, had a purported warranty deed prepared by defendant, Andrew N. Witko, and thence induced plaintiff, Gregory Kaczur, to sign the same after assuring him that said purported deed was a document to be signed by Kaczur for the purpose of attaining additional insurance upon said real estate, when in truth and in fact it is alleged that it was a deed conveying said real estate to the defendant, Betty Coonrod, for a consideration of less than $100.00 [Exhibit D].

It was further alleged that on August 27, 1953, said Betty Coonrod, at the request of defendant, George Kuzma, exe-

cuted a warranty deed conveying said real estate in trust to Lake County Trust Company, as Trustee (Exhibit E) under a trust agreement dated the 27th day of August, 1953; that defendant, George Kuzma, obtained a buyer for the sale of said property and directed the Lake County Trust Company, as Trustee, to convey said real estate to the purchasers, Ford Brown and Elvira Brown, for the sum of $20,000.00, which sum was paid to defendant, George Kuzma, who, on September 9, 1955, notified plaintiffs that property was sold and they must vacate the property.

Plaintiffs further alleged that at the time of the signing of said deed [Exhibit B] they knew not that they had actually signed a deed; that the Notary who acknowledged the execution of the deed did not explain fully the contents of said deed to plaintiffs, who had no knowledge that said deed was signed until September 9, 1955.

Plaintiffs further allege that they had no knowledge of the English language, either spoken or written, and hence depended on one Andrew N. Witko, a Notary Public; that said Witko acted as plaintiffs' attorney, spoke their language, but failed to disclose to plaintiffs that they had signed a warranty deed thereby indicating a conveyance of said real estate to one Betty Coonrod, a defendant; that the said Witko acted as legal advisor to George Kuzma, a defendant.

It was further alleged by plaintiffs that no consideration was paid to them for the signing of said deed; that there was no purpose or reason for plaintiffs conveying the real estate to the said Betty Coonrod whence said conveyance was consummated by defendants Witko and Kuzma with an intent and purpose fraudulent in nature, to the detriment of the plaintiffs, in the conveyance of the real estate in question.

The defendants, Lake County Trust Company, Ford Brown and Elvira Brown, husband and wife, were made party defendants because of their knowledge of the fraud perpetrated by George Kuzma, and Andrew Witko and Betty Coonrod to answer to any interests, if any, possessed by them.

Plaintiffs further allege, as heretofore shown, that they had no knowledge of the fraud alleged herein until the 9th day of September, 1955, which was the date that the defendant George Kuzma, announced to the plaintiffs that they must vacate said property. Plaintiffs upon contacting Attorney Witko, who had as heretofore stated, acted as their attorney, were told that they must surrender possession of the property or be evicted.

Plaintiffs, as a prayer in the first paragraph of their amended complaint, demanded that the warranty deed executed by the plaintiffs in favor of Betty Coonrod on the 28th day of August, 1951, and the warranty deed executed by plaintiff Gregory Kaczur, as trustee, to Betty Coonrod, on the 24th day of August, 1953, be set aside declared null, void, and of no effect, and for damages in the sum of $30,000.00, for costs and proper relief. In the third paragraph of the amended complaint, plaintiffs allege ownership in fee simple to the involved real estate and assert that defendants claim an interest adverse to the plaintiffs and prayed that title to said real estate be quieted in their names. Appellant urges as grounds for reversal Specifications No. 1 and 2, of his new trial motion. The sufficiency of the evidence is challenged by Specification No. 1, and the charge that the decision of the Trial Court is contrary to law is alleged by Specification No. 2.

We recognize the rule that this court will not weigh the evidence, but may by the examination of the record only, determine if any evidence or reasonable or logical inference deducted therefrom will sustain the verdict of the jury or the judgment of the court. It is not within the province of this court to substitute its findings and judgment for that of the Trial Court.

*Badgley* v. *State; Brown* v. *State* (1949), 226 Ind. 665, 82 N. E. (2d) 841; *Costa et al.* v. *Costa et al.* (1953), 124 Ind. App. 128, 115 N. E. (2d) 516; *Portland, etc., Mach. Co.* v. *Gibson* (1916), 184 Ind. 342, 111 N. E. 184.

In light of the above stated principle we summarize briefly the evidence most favorable to appellees.

According to the record both Anne Kaczur and her husband, Gregory Kaczur, in 1949, entered the United States, and after living in Boston, Massachusetts for two years became residents of Gary, Indiana. George Kuzma, appellant, was living in Gary. He was a brother-in-law of Gregory Kaczur, Appellee. Appellees had very limited knowledge of the English language at any time and up to the time of the trial, and conversation with appellant was usually by use of the Ukrainian or Polish languages.

Final transactions relative to the purchase of a home for appellees was through a real estate agency. According to appellees, the property was purchased for the sum of $9,-700.00 with a down payment of $500.00, and at the time of closing which took place in the office of Attorney Witko and under his supervision, the appellees delivered a check for $6,200.00 to Mr. Witko, and in addition thereto $900.00 in cash, all to be applied on the purchase price, thence the balance of $2,100.00 was obtained by a loan acquired from the First Federal Savings and Loan Association, and which loan was secured by a note and mortgage signed by appellees to secure said loan. At the time of the closing of the transaction, since payment had been made in full to the sellers, a deed was executed in favor of appellees who thereupon moved into the dwelling.

Appellants made all payments on the mortgage as reflected in the loan account book which was kept in the appellees possession until payment had been made in full on the mortgage in July, 1953, then appellant George Kuzma took possession of the book and told appellee Anne Kaczur he would keep it "in a Safe Deposit Box."

Evidence found favorable to appellees, discloses that appellees paid taxes and insurance on the property in addition to making payments on the mortgage and for repairs on the

furnace, replacement of gutters; and at times they gave to appellant, George Kuzma, money for payment of taxes, and who, unknown to the appellees, had some receipts for payments therefor made out in his name. Appellant argues strenuously that there was evidence of probative value, and undisputed, that appellant's Federal Tax Return for the years in question contained as income, the rents from a portion of the property in question and also the sale of the property as shown by "Schedule D." Appellant attempted to have copies of Gregory Kaczur's Federal Tax Returns admitted into evidence as exhibits. This the Court refused upon objection by the appellees as not germane to the issues.

Appellant argues that the evidence fails to support the Trial Court's findings that appellees had approximately "Fifty-Fifty" (50-50) interest with George Kuzma, Appellant, in the involved real estate and therefor the trial court committed error in making such findings and rendering judgment thereon. The following are the findings of the Court, to-wit:

## FINDINGS

"This cause being at issue, and having been submitted to the Court for trial, without the intervention of a jury; and the Court having heard the evidence and the arguments of counsel, now waives the filing of briefs herein; and the Court being duly advised in the premises NOW FINDS for the Plaintiffs on their amended complaint.

"The Court further finds that in the month of August, 1951, the plaintiffs and defendant, George Kuzma, desired to purchase a residence property; that plaintiffs, Gregory Kaczur and Anna Kaczur, husband and wife, were recent arrivals in the United States and were not conversant with or understanding of the English language.

"The Court also finds that the plaintiffs and defendant, George Kuzma, were related by marriage and the plaintiffs reposed trust and confidence in said defendant, George Kuzma.

"The Court further finds that on the 20th day of August, 1951, plaintiffs having found the residence property in

which they were interested, went to the Dobis-Danch Agency and executed a purchase proposition to Joseph Bardos wherein plaintiffs offered to pay the sum of Nine Thousand Seven Hundred Dollars ($9,700.00) for the following described real estate situated in Lake County, Indiana, to-wit:

'Lots 30 and 31, in Block 3, as marked and laid down on the recorded plat of Gary Land Company's Eleventh Subdivision, in the City of Gary, Lake County, Indiana, as the same appears of record in Plat Book 13, page 25, in the Recorder's Office of Lake County, Indiana.'

and in pursuance of said purchase deposited Five Hundred Dollars ($500.00) earnest money thereon, as evidenced by a Gary National Bank cashier's check, the same being plaintiff's Exhibit #H herein; that thereafter the said Joseph Bardos accepted said purchase proposition (Defendant's Exhibit #10).

"The Court finds that in order to consummate the purchase of said real estate the plaintiffs and defendant, George Kuzma, employed the services of Attorney Andrew N. Witko, who was fully familiar with the native language of plaintiffs and defendant, George Kuzma, and with the English language; that they requested said Attorney to arrange a loan on said real estate, which he did with the First Federal Savings and Loan Association of Gary, Indiana, for whom he also acted as attorney.

"The Court finds that on the 20th day of September, 1951, the plaintiffs and defendant George Kuzma, went to said First Federal Savings & Loan Association of Gary, Indiana, to close said real estate purchase and loan; that said plaintiffs and defendant, George Kuzma, made a down payment of Seven Thousand Thirty-Eight Dollars and Sixty-three cents ($7038.63) by depositing a Gary National Bank cashier's check dated September 20, 1951, in the sum of Six Thousand Two Hundred Dollars ($6,200.00) (Plaintiffs' Exhibit #G), and Eight Hundred Thirty-eight Dollars and Sixty-three cents ($838.63) cash; that said sum of Seven Thousand Thirty-Eight Dollars and Sixty-three cents ($7,-038.63) consisted on One Thousand Nine Hundred Dollars ($1,900.00) contributed by plaintiffs and Five Thousand One Hundred Thirty-Eight Dollars and Sixty-Three Cents ($5,138.63) contributed by the defendant, George Kuzma.

"The Court further finds that the plaintiffs executed a first mortgage and note (Plaintiffs' Exhibit #B) in their names

to the First Federal Savings & Loan Association of Gary, Indiana, for the principal sum of Two Thousand One Hundred Dollars ($2,100.00) ; that the plaintiffs paid off said mortgage and note by paying to the First Federal Savings & Loan Association of Gary, Indiana, the sum of Two Thousand Seven Hundred Ninety-Five Dollars and Eight-Seven Cents ($2,795.87), which included principal, interest, property taxes and life insurance (see Plaintiffs' Exhibit #D).

"The Court finds that in exchange for said down payments and mortgage money the said Joseph Bardos executed to the plaintiffs, Gregory Kaczur and Anne Kaczur, his warranty deed to the above described premises (Plaintiffs' Exhibit #A), which deed contained the following words of conveyance, to-wit:

'. . . That Joseph Bardos, a widower, being the surviving husband of Rozalia Bardos, deceased, who died on April 22, 1951, of Lake County, in the State of Indiana, CONVEY AND WARRANT to Gregory Kaczur and Anne Kaczur, husband and wife, of Lake County, in the State of Indiana, for and in consideration of One Dollar and other good and valuable considerations, the receipt of which is hereby acknowledged, . . .'

"The Court further finds that after the execution of said warranty deed from Joseph Bardos to plaintiffs that the defendant, George Kuzma, fraudulently induced the plaintiffs to execute their warranty deed (plaintiffs Exhibit #E) to said real estate to Betty Coonrod, a spinster, for a stated consideration of One Hundred Dollars ($100.00) ; that said conveyance was procured by fraud and in fact no consideration was paid by the said defendant, George Kuzma, therefor.

"The Court finds that subsequently the said Betty Coonrod, a spinster, conveyed said real estate by her deed in trust (Plaintiffs Exhibit #F) to the plaintiff, Gregory Kaczur, as trustee and Anne Kaczur, as successor in trust, for a stated consideration of One Hundred Dollars ($100.00) ; that no consideration was in fact paid for this conveyance. "The Court further finds that on the 24th day of August, 1953, the defendant, George Kuzma, fraudulently induced the plaintiff, Gregory Kaczur, to execute his warranty deed (Plaintiffs Exhibit #I) as trustee, to Betty Coonrod, a spinster, for the stated consideration of One Hundred Dol-

lars ($100.00); that in fact no consideration was paid plaintiffs for this conveyance.

"The Court finds that subsequently the said Betty Coonrod conveyed said property to the Lake County Trust Company, as trustee, for the benefit of the defendant, George Kuzma; that the said Defendant, George Kuzma, on the 27th day of September, 1955, sold said real estate to Ford Brown and Elvira Brown, husband and wife, for a consideration of Twenty Thousand Dollars ($20,000.00); that the said Ford Brown and Elvira Brown were bona fide purchasers for value of said property.

"The Court further finds that subsequent to the date of purchase the plaintiffs paid all of the expenses for the upkeep and maintenance of said real estate until the time of its sale; that they were never repaid for the Five Hundred Dollars ($500.00) paid to Dobis-Danch Agency, the One Thousand Nine Hundred Dollars ($1,900.00) paid down on the date of closing or the Two Thousand Seven Hundred Ninety-Five Dollars and Eighty-Seven Cents ($2,795.87) paid to First Federal Savings & Loan Association of Gary, Indiana.

"The Court further finds that through the respective contributions of the plaintiffs and defendant, George Kuzma, toward the purchase of said real estate, and the expenses and improvements thereon, that plaintiffs and defendant, George Kuzma, were substantially fifty-fifty (50-50) owners of said real estate; that the defendant, George Kuzma, fraudulently appropriated the entire sales price of Twenty-Thousand Dollars ($20,000.00) received from the sale of said property to his own use and that the plaintiffs received nothing for their Fifty percent (50%) ownership interest in said real estate.

"The Court further finds that the Two Thousand Five Hundred Dollar ($2,500.00) payment and release (Defendant's Exhibit #1) executed on September 14, 1955, received and executed by plaintiffs to defendant, George Kuzma, was in satisfaction of board furnished him and advancements given him by plaintiffs.

"The Court further finds that Attorney Andrew N. Witko represented conflicting interests throughout the entire real estate transaction heretofore outlined. That he represented the plaintiffs, Gregory and Anne Kaczur, the defendant, George Kuzma, and the First Federal Savings and Loan Association of Gary, Indiana, whose interests were conflicting.

"Finally, the Court finds that the plaintiffs are entitled to recover of the defendant, George Kuzma, the sum of Ten thousand Dollars ($10,000.00) together with six percent (6%) interest from September 27, 1955, to date."

Appellant called attention to a discrepancy of the total payments as stated in the appellees' answer brief and that shown in the finding of the court. This was shown to be $67.37 less as the amount computed by the Court. We may assume that the Trial Court may have taken into account a factor or factors not expressed by appellees.

The initial complaint in this cause was filed in the Lake Circuit Court on July 21, 1959. The record disclosed six (6) entries during 1959, with leave granted plaintiffs to file an amended complaint on November 12, 1959. The eighth (8) entry, 1960, on April 26, 1960, indicated a Change of Venue of the case to Newton County upon application by the plaintiffs. Five (5) more entries were listed in 1960. Eleven (11) entries are shown for 1961. Seven (7) entries were made in 1962. The Court's findings and decree, heretofore listed, were entered as of May 18, 1962. On February 27, 1963, the Court overruled Defendant, George Kuzma's motion for a new trial. This was followed by an entry granting defendant's motion for an appeal to the Indiana Appellate Court, May 14, 1963. The Court signed the Bill of Exceptions on July 16, 1963. Thus, this case was in the Trial Court for approximately four (4) years.

The transcript is composed of eighty-three (83) pages of record and seven hundred and twelve (712) pages constituting the Bill of Exceptions.

Taking into consideration that plaintiffs' were not conversant with the English language in only a limited degree, but possessed knowledge of the Ukrainian and Polish languages, an interpreter was authorized and appointed by the Court to assist plaintiffs when presenting evidence during the course of the trial. This impediment of a language barrier and the fact that Plaintiff Gregory Kaczur and Defendant

George Kuzma were brothers-in-law placed an unusual challenge upon the court in the determination of the trial.

The following plaintiffs' exhibits, introduced in evidence, were considered in the findings of the Court, to-wit:

(G) A Gary National Bank Cashier's Check dated September 20, 1951, in the sum of $6200.00.

(B) A first mortgage and note executed by plaintiffs in their names to the First Federal Savings and Loan Association of Gary, Indiana, in the principle sum of $2,100.00.

(D) A passbook No. A-2956, of the Loan Account showing total payments by the plaintiffs in the sum of $2,-795.87, to pay off the mortgage.

(A) A Warranty Deed by Joseph Bardos—seller of the real estate to Gregory Kaczur and Anne Kaczur for the involved real estate.

(E) A Warranty Deed from plaintiffs conveying the real estate to Betty Coonrod, a spinster, for the consideration of $100.00.

(F) A deed by Betty Coonrod, a spinster, conveying the real estate in trust to Plaintiff Gregory Kaczur, as trustee, and to Anne Kaczur, as successor in trust, for a consideration of $100.00.

(I) A Warranty Deed executed by Gregory Kaczur, as Trustee, to Betty Coonrod, spinster, for involved real estate.

(H) A Gary National Bank Cashier's check deposited by plaintiffs as earnest money binding sale of real estate.

The Court referred in its findings to the following defendant's exhibits introduced in evidence:

(1) A receipt signed by plaintiffs for $2,500.00 for payment by George Kuzma, defendant, and a release by plaintiffs was in satisfaction of board furnished him and advancements given him by plaintiffs.

(10) Acceptance of purchase proposition by Joseph Bardos.

It should be noted that plaintiffs' designated exhibits attached to their complaint were differently designated when plaintiffs' exhibits were admitted in evidence.

The Court in its findings stated that plaintiffs and, defendant, George Kuzma, made a down payment of $7,038.62 by

check [Plaintiffs' Exhibit "G"] and cash of which $1,900.00 was contributed by plaintiffs and $5,138.63 by defendant, Kuzma. We conclude that the evidence most favorable to the appellees supports such finding. Further we hold that the finding of the Court that plaintiffs [Plaintiffs' Exhibit "D"] paid off the note and mortgage [Plaintiffs' Exhibit "B"] and necessary expenses and expenditures connected therewith all in the sum of $2,795.87 is supported by facts most favorable to appellees. The Court found that upon payment in full of the purchase price for real estate, Bardos, a widower, executed a warranty deed conveying such real estate to plaintiffs. There appeared to be no controversy between the parties as to the execution of this deed other than that appellant alleged title in the names of the plaintiffs was in trust which contention was not accepted by the Court or it would have so designated its approval. We likewise conclude such a finding by the Court is sustained by the evidence. In regard to plaintiffs' Exhibit "E," the Court held that George Kuzma, defendant, fraudulently induced plaintiffs to execute a deed conveying real estate to Betty Coonrod, a spinster, for a consideration of $100.00. This finding was no doubt prompted by the evidence that no explanation was given as to the contents of the deed, that Attorney Witko failed to read the content of the deed to plaintiffs, nor did he attempt to translate the content thereof in a language that plaintiffs understood, and as a result thereof plaintiffs failed to comprehend what they were signing, and, also, that no consideration was given or received in the execution of said deed.

The Court further found that the conveyance of the real estate by her deed in trust [Plaintiffs' Exhibit "F"] to Gregory Kaczur, as trustee, and to Anne Kaczur, as successor trustee, was for a stated consideration of $100.00, which sum was never paid for the conveyance. The evidence tends to support this finding inasmuch that plaintiffs testified that they never saw this deed prior to the trial; that it was neither read nor explained to them.

Testimony by Anne Kaczur on direct examination by attorney in reference to Plaintiffs Exhibit "F" in part follows:

"Q. I show you what has been identified as Exhibit "F." Did you ever see this?

"A. No.

"Q. Before.

"A. I never see nothing.

"Q. Do you know what it is?

"A. No.

"Q. Did anybody read it to you?

"A. No, sir.

"Q. Did the notary public read it to you?

"A. No, sir.

"Q. Did you talk to Betty Coonrod at the time about this piece of paper?

"A. I never saw her, I never talked to her.

"Q. Did you know that this document conveyed this property to you and your husband as Trustee or Successor in Trust?

"A. My gosh, first time I know . . .

Mr. Tomsich: Answer "yes" or "no"

"A. No--sir--ee, no--siree, I am swear no.

"Q. You didn't know nothing about these papers?

"A. Nothing about, I swear nothing.

"Q. Did you husband know anything about it, if you know?

"A. No, no.

"Q. Did you receive the sum of $100.00?

"A. I never received one penny.

"Q. Did you know whether your husband received anything?

"A. No sir, what I do, same thing. I know what my husband do.

"Q. Did anyone translate this document to you from the English language to the Ukrainian language or the Polish language?

"A. No sir, No sir, No sir.

"Q. When was the first time you see these papers?

"A. Just right now when you show me.

"Q. This is the first time?

"A. First time when you show me.
"Q. You never saw this before?
"A. No, this is the first time.
"Q. Did you know it was in existence?
"A. I don't know nothing.

[Plaintiffs' Exhibit "F" admitted in evidence]

Testimony given by Gregory Kaczur was to the effect that he remembered signing plaintiffs' Exhibit "I" at his home, but signed upon the recommendation by George Kuzma that the instrument referred only to insurance covering the property. The Court found that George Kuzma fraudulently induced Gregory Kaczur, a plaintiff, to sign as trustee. Evidence indicated that Gregory Kaczur signed because of his trust and faith in George Kuzma. We think these facts set forth with additional inferences which can be reasonably drawn therefrom are sufficient to sustain the finding of the Court.

Where a party makes a statement of a material fact with the knowledge that the same is untrue, with a purpose of inducing another party to act in a certain manner, and the person to whom it is made believes the statement to be true and relies thereon, the party making such statement is guilty of fraud. *Hartman* v. *International Building, etc., Assn.* (1901), 28 Ind. App. 65, 62 N. E. 64.

In the case of the *Farm Bureau Mutual Ins. Co.* v. *Seal, Admr.* (1963), 134 Ind. App. 269, 179 N. E. 2d 760 (Transfer denied), the court held that where a party knowingly mis-states the contents of a writing and purposely mis-states the facts which causes a signing of the same, fraud exists.

In *Jones, Admr.,* v. *Hurst* (1925), 83 Ind. App. 647, 149 N. E. 449, it was held by the Court that a party who induces the making of a deed by a fraudulent representation is liable for damages thereby resulting.

In the case at bar the alleged fraud was not limited to a specific time nor to a specific circumstance. In the case of

*Daly* v. *Showers* (1937), 104 Ind. App. 480, 8 N. E. 2d 139, 142, it was stated by the Court:

". . . However, the wisdom of an exact legal definition of fraud has been questioned, and it has been stated that fraud is better left undefined, and some courts have said that the common law not only fails to define fraud but perhaps asserts as a principle that there shall be no definition. Further it is frequently stated that owing to the multiform character of fraud and the great variety of attendant circumstances no definition which is all inclusive can be framed, but each case must be determined on its particular facts."

We hold that the evidence in the case at bar is sufficient to support the decision of the Trial Court.

Appellant charges as a ground for reversal of the Court's judgment that the plaintiffs' complaint alleged a conspiracy by George Kuzma, Andrew N. Witko and Betty Coonrod by perpetrating a fraud upon plaintiffs, and that they conspired together to cheat, swindle and defraud plaintiffs of the real estate, and that the decision of the Court was contrary to law inasmuch as the Trial Court's decision did not conform to the issues presented by the pleadings. In support of the appellants' contention the argument was advanced that the judgment went clearly beyond the scope of the pleadings in that the judgment against George Kuzma only disaffirms the existence of a conspiracy which was the basis of the action and the entry upon which the suit was tried. This contention of appellant is strenuously denied by the appellees.

We think the gravamen of the complaint is founded on fraud rather than conspiracy. Authorities are numerous that there exists no civil action for conspiracy in Indiana. *Union Loan and Trust Co.* v. *Hottmire* (1937), 103 Ind. App. 499, 4 N. E. 2d 58; *Grimm* v. *Baumgart* (1951), 121 Ind. App. 626, 96 N. E. 2d 915; *The Dorsey Machine Company et al.* v. *McCaffrey* (1894), 139 Ind. 545, 38 N. E. 208.

It is stated in the case of *Union Loan and Trust Company* case, *supra,* as follows:

". . . The authorities do not recognize such a proceeding as a civil action for conspiracy. There is an action for damages caused by acts pursuant to a formed conspiracy but none for conspiracy alone. . . . In a civil action for damages, the gist of the wrong is the damages."

Appellees cite the case of *Mendenhall et al.* v. *Stewart, Executrix* (1897), 18 Ind. App. 262, 47 N. E. 943, as possessing striking similarity to the case at bar. In the *Mendenhall* case it was alleged in the complaint, "that Mendenhall, Hoover and Eilar conspired together with the intent to fraudulently procure from appellee on the credit of Eilar certain goods by means of false representations as to the credit of Eilar and Hoover."

Mendenhall appealed from a judgment rendered against him. Mendenhall urged a reversal as one of the causes due to his objection to an instruction of the Court which predicated liability on fraud rather than conspiracy. Concerning this, the Court in Mendenhall's case stated:

"It is argued that this instruction seeks to hold Mendenhall liable upon a different cause of action from that alleged in the complaint.

"As we have before said, that while the complaint charges a conspiracy, yet the cause of action is what is alleged to have been done pursuant to the alleged conspiracy. Obtaining credit for Eilar and obtaining for him certain goods by writing the alleged false letter of credit or guaranty is the gist of the action. The court in another instruction correctly told the jury, that if the evidence warranted it they might find a verdict against any one or more of the defendants and in favor of the others. The tort growing out of the conspiracy gave appellee her right of action. The conspiracy may be shown as a matter of aggravation, but it is not the foundation of the action."

We also quote from the *Dorsey Machine Company, supra,* at Page 552:

"The conspiracy is charged in the complaint for the purpose of holding certain of the appellants liable for the damage the appellee has sustained by reason of the false and fraudulent representations claimed to have been made to her, by which she was induced to purchase said shares of stock, and in the making of which they did not actually participate. But to hold such company liable for the direct and proximate consequences of said representations made by its president and chief officer and agent, for and on behalf of the company while transacting its business, it is not necessary to either charge or prove a conspiracy, because the foundation of the action is the damage done the plaintiff by the violation of her rights, and not the conspiracy. The fact of conspiracy is only of aggravation."

We think that in the case at bar the pith of the complaint is based on certain fraudulent acts that were committed by George Kuzma, Appellant, in joining with others in leading appellees in signing a trust agreement, and also, several warranty deeds unlawfully depriving appellees of their rightful and lawful interests in the involved real estate.

We hold that in line with authorities such illegal or wrongful conduct established the case for the action rather than conspiracy as alleged by appellant. Appellant also raises objection under the specification that the decision of the court was contrary to law, and the Court's finding that appellees were only fifty percent (50%) owners, thereby contending that such finding is beyond the issues inasmuch as appellees' amended complaint alleges sole ownership of the property. Appellant relies on general knowledge that the decision and judgment must be in harmony with the issues. We hold that the issue presented by the amended complaint and the answer filed thereto was whether appellant deprived appellees of an interest in the real estate set forth and described in the amended complaint.

When an answer is filed in the cause that is contested the court may grant such relief in harmony with the case made by

the complaint and embraced within the issues. Acts 1881 (Spec. Sess.), Ch. 38, § 450, p. 240 being § 2-1057 Burns' 1946 Replacement. *City of Ft. Wayne v. Capehart-Farnsworth et al.* (1957), 127 Ind. App. 412, 142 N. E. 2d 442. We cite a paragraph from 49 C. J. S. Judgment § 48, at page 111, as follows:

"In determining whether or not the pleadings support the judgment, they must be taken as a whole, and construed so as to support the judgment, if capable of such a construction. Substantial accordance is sufficient; and to upset a judgment for variance between it and the pleadings in a contested case, it has been held that there must be an entire abandonment of the very substance of the dispute to which defendant was summoned, and the substitution of another which he could not have anticipated, and which he had no opportunity to meet. . . ."

A judgment will not be reversed unless it is founded upon a totally different cause of action than that sued upon. Furthermore, we hold that a plea of entire ownership in property sued for authorized a recovery of a less interest. The Court in the case of *Mendenhall, supra,* referring to conflicting evidence said:

"The evidence on many of the material questions in the case is very conflicting, and this court cannot weigh it to determine where the preponderance lies. There was evidence to which the instructions given were applicable, and after a careful consideration of all the evidence we think the verdict of the jury is fully sustained by the evidence."

Where the Court in its findings did not find Attorney Witko guilty of either fraud or connected as a party to a conspiracy, nevertheless, the Court found that said Attorney Witko "represented conflicting interests throughout the real estate transactions heretofore outlined."

As heretofore stated, the Court made a finding in paragraph thirteen to the effect that plaintiffs and defendant Kuzma, were "substantially fifty-fifty (50-50) owners of said

real estate," which was followed in paragraph sixteen, "that the plaintiffs are entitled to receive of George Kuzma, the sum of Ten Thousand Dollars ($10,000.00) together with 6% interest thereon from September 27, 1955," the same being the date of the deed to Ford Brown and Elvira Brown, husband and wife.

Since this cause of action was in the Trial Courts from July 21, 1959, the date the initial complaint was filed to February 27, 1963, on which date the Newton Circuit Court overruled defendants' motion for a new trial, and apparently inasmuch as several deeds had been executed prior to the beginning of this action culminating in a deed to Ford Brown and Elvira Brown, bona fide purchasers for value, and adding thereto substantial evidence of probative value favorable to appellees, we think the Court could rightly conclude that there would be no finding of a cancellation of deeds, but we may presume that an assessment of damages by the Court was an alternative remedy.

In summarizing the role of a judge we quote with approval from the case of *In the Matter of Van Walters et al.* v. *Board of Children's Guardians, etc.* (1892), 132 Ind. 567, 32 N. E. 568, as follows, at page 571:

> "The fundamental rule is that public officers are presumed to do their duty. This rule intensifies in force when applied to *Judges,* for they *hear with deliberation,* act with *impartiality,* and decide upon the *law* and the *evidence.* In the law they are *learned,* and the evidence (upon which they act) they derive, under wise rules, from trustworthy sources." (Our emphasis)

During the course of the trial, the Court could take notice of the demeanor of the principals involved in the litigation, their demeanor on the witness stand, their responses, their facial expressions, their several interests in the outcome of the trial, their educational background, their language and in the case of conflicting testimony whom to believe and not believe. Also, the Court had the opportunity to note the demeanor of

other witnesses on the witness stand, both on direct and cross examination, their responses, whether direct or evasive, their prejudices, if any, their interest in the outcome of the trials, if any, their sincerity or the lack thereof, and if the testimony is conflicting, whom to believe or disbelieve.

The evidence on many of the material questions pertaining to and propounded in the case at bar is very conflicting, and this Court cannot weigh the same as to where the preponderance lies.

Appellant in his Brief, Volume I, waives Specifications Nos. 2 and 3, of his assignment of errors, to-wit:

"No. 2, the Court erred in its several findings and judgment of appellees," and

"No. 3, the Court erred in over-ruling the motion of appellant George Kuzma to strike parts of findings and judgment for appellees,"

hence, these specifications of the assignment of errors will receive no consideration by this court.

We hold that under the attack herein made by appellant, we conclusively assume that there is sufficient evidence of probative value supporting the decision and judgment of the trial court, and the same is not contrary to law.

There being no reversible error the judgment is affirmed.

Judgment affirmed.

Smith, P. J., Hunter and Mote, JJ., concur.

ON PETITION FOR REHEARING

BIERLY, J.—The citation of errors presented by the petitioner has been corrected.

Inasmuch as the judgment of the court indicated the interest should begin from September 27, 1955, we are bound by the terms of the judgment, and make no correction thereof.

We think other matters brought out in the Petition for Rehearing are insufficient to grant a rehearing and hence the Petition for Rehearing is hereby denied.

NOTE.—Opinion and opinion on Petition for Rehearing denied in 214 N. E. 2d 195.