CITY OF GARY BY AND THROUGH ITS DEPARTMENT OF REDE-
VELOPMENT AND THE CITY OF GARY *v.* VITA RUBERTO.

[No. 3-1274A214. Filed September 22, 1976.]

*Nick Katich, Addison, Stiles and Greenwald,* of Gary, for appellant Department of Redevelopment, *Charles A. Ruckman,* of Gary, for appellant City of Gary.

*Lowell E. Enslen, Herbert E. Boase, McHie, Enslen & Moran,* of Hammond, *George Vann, Barce, Barce & Vann,* of Kentland, for appellee.

STATON, P.J.—Vita Ruberto owned a five-unit cold-water apartment building at 1726 Jefferson Street in midtown Gary, Indiana. On December 23, 1969, she brought this action against the City of Gary by and on behalf of its Redevelopment Department[1] for (1) damages arising from the taking of her property under an urban renewal plan without compensation (inverse condemnation), and (2) punitive damages and damages for lost rental income arising from the conspiratory efforts of various municipal departments to encourage tenants to stop paying rent and to vacate the premises. After an evidentiary hearing on September 8, 1970, the trial court found that a taking had occurred on September 1, 1969. The court appointed appraisers to value the property as of that date. Later, a jury returned a verdict for plaintiff Ruberto for $19,000.00 on her inverse condemnation claim and for $8,000.00 on the conspiracy claim.

The City contends that there was insufficient evidence to support the trial court's finding that a taking occurred and insufficient evidence to sustain the jury's verdict on the damages claim. Since we agree, and we must reverse on these grounds, we need not consider the other contentions of error raised by this appeal.

---

1. The "City of Gary by and on behalf of its Redevelopment Department" was the only named defendant when the suit was filed. The trial court assumed throughout the proceedings that the "Civil City of Gary" was also a party defendant. Before the jury trial, the Civil City of Gary conceded the court's jurisdiction over it and actively participated in the proceedings. The Appellants' Brief was filed on behalf of all defendants. For the sake of simplicity, we will refer to all defendants-appellants as the City.

## I.

## Waiver

Initially, we must dispose of Ruberto's contentions that the City has waived its right to challenge the sufficiency of the evidence. Ruberto argues that the City's statement of the facts is "incomplete, biased and does not impartially state the evidence presented . . . ." This Court has held that:

> "The failure to set forth fully the evidence in narrative form as is necessary to present a full understanding of the questions presented will be deemed a waiver of any questions depending upon the evidence. Flanagan, Wiltrout and Hamilton, Indiana Trials and Appellate Practice, § 2677, Comment 8." *Tice* v. *Thompson* (1965), 137 Ind. App. 338, 345, 208 N.E.2d 203, 206.

We have reviewed the entire record. We conclude that the narrative is sufficiently impartial and complete "to present a full understanding of the questions presented." See Indiana Rule of Procedure, Appellate Rule 8.3(A)(5). We find no waiver on this ground.

Ruberto also suggests that the transcript of the evidentiary hearing held on September 8, 1970, has not been properly certified and made a part of the record on appeal. The judge's certification followed two transcripts of evidence prepared by the court reporter on the same day and presented to the judge at the same time. One transcript was of the evidence at the bench trial on September 8, 1970, on the issue of taking, and the other transcript was of the evidence at the jury trial on March 19, 1974, on the issues of damages and conspiracy. The judge's certification states that "this transcript of the proceedings at the trial correctly sets forth and contains all of the evidence given at the trial of this cause . . . in the Newton Circuit Court." Ruberto's argument presumes that the phrase "transcript of the proceedings at the trial" includes only the proceedings at the jury trial and does not include the proceedings at the bench

trial on the taking issue. We disagree. The trial of this case included both the hearing on the taking issue and the jury trial on the damages issue. See *Levee Auth. Dist.* v. *Towne Motel, Inc.*, (1966), 247 Ind. 161, 213 N.E.2d 705. Clearly, the judge's certificate is sufficiently worded to apply to the transcripts of the two phases of the case.

## II.

### Sufficiency of the Evidence

When the sufficiency of the evidence is challenged on appeal this Court may not weigh the evidence or judge the credibility of the witnesses. In *Estate of Anderson* v. *Smith* (1974), 161 Ind.App. 480, 316 N.E.2d 592, 593, the Court stated:

> "Our task is to determine whether there is substantial evidence of probative value in support of each necessary element of plaintiff's case. This means there must be competent, relevant, material evidence which would naturally lead, or involuntarily tend to lead, a rational, impartial mind to a conclusion for which there is a substantial reason, rather than one based upon mere guess, conjecture, surmise, possibility or speculation."

Of course, appellee is entitled to all reasonable inferences from the evidence in the record, and we must look to the evidence most favorable to the findings of the trier of fact. *State Farm Life Ins. Co.* v. *Spidel* (1964), 246 Ind. 458, 202 N.E.2d 886; *Hinds* v. *McNair* (1955), 235 Ind. 34, 129 N.E.2d 553.

### A. Taking—Inverse Condemnation

At the evidentiary hearing on September 8, 1970, the burden was on plaintiff Ruberto to establish that a taking of her property had occurred. The test for a taking of property has been stated as follows:

> "It therefore follows that either some physical part of the real estate must be taken from the owner or lessor, or some substantial right attached to the use of the real estate taken before any basis for compensable damage may be obtained

by an owner of real estate in an eminent domain proceeding. It must be special and peculiar to the real estate and not some general inconvenience suffered alike by the public." *State* v. *Jordan* (1966), 247 Ind. 361, 368, 215 N.E.2d 32, 35. *See also Schuh* v. *State* (1968), 251 Ind. 403, 241 N.E.2d 362; *State* v. *Stefaniak* (1968), 250 Ind. 631, 238 N.E.2d 451.

We conclude that the evidence presented at the evidentiary hearing on September 8, 1970, was insufficient to establish a taking under this test.

The evidence viewed in the light most favorable to Ruberto shows that in 1969 Ruberto's property was forty-five years old and "like all the properties of that area had what the City calls violations that are greater than minimum." Between March 17, 1966, and January 1969, Ruberto's property was inspected by the City Building Department a number of times, and Ruberto received notices to make repairs because of building code violations. Ruberto did not make the required repairs because they were economically unfeasible. For example, an estimate for only the minor electrical repairs was equivalent to one year of rental income from the five apartments.

After repeated visits to Ruberto's apartment building by Building Department inspectors in January 1969, the inspectors posted signs on the apartment saying "Condemned by the City of Gary. Unfit for human habitation." After that, the tenants refused to pay rent and, finally, moved out of the building in September or October of 1969. The vacant building, although secured and boarded up, attracted vandals, who stripped the structure to a mere shell.

Ruberto's property was included in a 1964 study which designated the "Midtown West" area of Gary as scheduled for redevelopment and urban renewal. The study suggested dividing the area in to five phases, to be redeveloped over a period of ten years. Apparently, the ten-year plan was approved by HUD. The results of the study were widely publicized in the Gary area. Since the plan involved major rebuilding,

with only a small portion of the existing structures left intact, there were great feelings of insecurity and uncertainty on the part of all the tenants and landlords in the Midtown West area. Repairs to properties in the renewal area were kept to a minimum because no one knew when the City might move through the unscheduled phases and begin to condemn the property.

At the time of the 1970 evidentiary hearing, the appropriate City departments had acted only on Phase One of the five phase project. Ruberto's property was located in Phase Four.

After the hearing, the trial court found specially that the City of Gary by and through its Redevelopment Department passed and adopted certain ordinances and resolutions whereby the "Midtown West" area was scheduled for demolition and redevolpment; that plaintiff's land was within those areas; that the City condemned plaintiff's property by attempting to require plaintiff to modify, convert, and rebuild her property, and, without lawful process, posted on plaintiff's tenants to quit paying rent; that the City's actions resulted in the complete vacation of plaintiff's building; and that at no time was compensation tendered to plaintiff. These special findings are not supported by the evidence presented at the hearing. The trial court's judgment that there was a taking on September 1, 1969, which is taken as a general finding in favor of plaintiff, is also not supported by the evidence.

The legislature may, without infringing constitutional prohibitions against the taking of property without compensation, require adherence to regulations enacted in the exercise of the general police power for purposes of public health, safety, or welfare. *Mugler* v. *Kansas* (1887), 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205; *State* v. *Richcreek* (1906), 167 Ind. 217, 77 N.E. 1085. The question of where regulation ends and taking begins must depend upon the particular facts and necessities of each case. In the present case, the evidence presented at the September 8 hearing

does not show that the City's actions stepped beyond the bounds of regulation into the area of taking without compensation.

Attempts by the Building Department to enforce building and safety codes do not amount to a taking:

"Cities and towns have power to establish reasonable regulations for the protection of the lives, health, and property of their citizens, and to enforce compliance with such regulations by fixing penalties to be imposed upon violators of the regulations. This necessarily implies the power to require the citizen to so use his property as not to defeat such regulations and render them ineffective. Reasonable regulations are not unconstitutional merely because they affect the uses to which private property may be put. This is not a taking of private property. It is an exercise of the police power." *Combs* v. *City of New Albany* (1966), 139 Ind. App. 641, 644, 218 N.E.2d 349, 351, quoting from *Spitler* v. *Town of Munster* (1937), 214 Ind. 75, 14 N.E.2d 579.

IC 1971, 18-5-5-1 *et seq.* (Burns Code Ed.) provides procedures and standards for enforcing compliance with building codes. The evidence in the present case shows that Ruberto's property was, for a long time, not in compliance with minimum code standards. As early as 1966, Ruberto was aware of violations. She admitted that she did not make the required repairs because the capital expenditure would have exceeded the income from the property. After many inspections and many notices of violations, Ruberto's property was finally condemned in January 1969. There is no suggestion that the City did not follow the statutory procedures when it placed "Condemned" signs on the property.

IC 1971, 18-7-7-1 *et seq.* (Burns Code Ed.) provides the procedures for the redevelopment of blighted areas. Under this chapter, the Redevelopment Department is empowered to exercise the right of eminent domain. First, the Redevelopment Department adopts a declaratory resolution identifying the blighted areas and stating its purpose to acquire the land within the described boundaries. *Id.* 18-7-7-12. This resolu-

tion is submitted to the plan commission, which determines if the redevelopment plan conforms to the master zoning plan. *Id.* 18-7-7-13. The Redevelopment Department has no power to proceed to acquire land in the blighted area "until the approving order of the plan commission is issued and approved by the city council or the board of town trustees." *Id.* When the plan commission and the common council have approved the plan, the Redevelopment Department must publish a notice of public hearing on the plan. *Id.* 18-7-7-14. After public hearing, the Redevelopment Department finally determines to confirm, modify or rescind its approved declaratory resolution. *Id.*

When the notice of public hearing is published, the statute provides for suspension of construction and rebuilding in the covered areas:

"A copy of the notice of the hearing on the proposed project shall be filed in the office of the city or town plan commission, the board of zoning appeals, board of public works, park board, building commissioner, and any other departments, bodies or officers of the city or town having to do with city or town planning, variances from zoning ordinances, land use, or the issuance of building permits. Such boards, departments, bodies and officers shall take notice of the pendency of such proceedings, and no construction, including substantial modifications, rebuilding, conversion, enlargement, extension or major structural improvements on existing property in the area described in the resolution referred to in said notice shall be authorized, nor shall any action be taken in respect to the zoning or rezoning of property within the area. . . . The foregoing prohibition shall not be deemed to forbid the granting of permits pertaining to ordinary maintenance or minor remodeling, or changes necessary to the continued occupancy of buildings within such area." *Id.*

In the present case, at the time of the evidentiary hearing, these procedures had been followed for the properties located within Phase One of Midtown West. The Redevelopment Department's declaratory resolution, describing only Phase One, was approved by the common council and the plan com-

mission, and was finally confirmed by the Redevelopment Department in September 1967. Ruberto's property was located four and one half blocks south of the boundaries of Phase One. The prohibitions of IC 1971, 18-7-7-14 regarding building and construction did not apply to her property.

We conclude that the evidence does not support the trial court's finding that a taking occurred on September 1, 1969. The evidence merely establishes an uneffected plan to redevelop the Midtown West area of Gary, an attempt by the Building Department to enforce compliance with minimum building codes, the departure of tenants at some point in time after the property was lawfully "condemned" for noncompliance with building codes, and the subsequent vandalism of the vacated property. There is no evidence that the City exceeded its lawful authority when it attempted to enforce the building codes or when it condemned Ruberto's property. There is no evidence that the City owed Ruberto a special duty to provide police protection from vandals. See *Simpson's Food Fair, Inc. v. City of Evansville* (1971), 149 Ind. App. 387, 272 N.E.2d 871. The City's failure to adequately protect Ruberto's property from vandals once the property was vacated does not amount to a taking without compensation in this case. There is no evidence that actions of the Building Department or of the Redevelopment Department went beyond the lawful exercise of their proper duties.

The gist of Ruberto's complaint is that various City departments worked together to reduce the value of her property, so that if, and when, the Redevelopment Department put into effect its redevelopment plan and determined to take her property under its eminent domain right, the department would be required to compensate her only for the value of her land, because the value of the building had been reduced to nothing. We do not hold that such concerted actions might not exceed the bounds of police power regulation and amount to a taking. We do hold, however, that Ruberto failed to

prove that the City took from her "some substantial right attached to the use of the real estate." She had no right to rent uninhabitable property which failed to comply with minimum code standards. The City condemned this property in the lawful exercise of its powers to protect the public health and safety.

Our review of the trial court's determination that a taking occurred is limited to a consideration of the evidence presented at the evidentiary hearing on this issue. We conclude that the evidence does not support the trial court's finding in this first phase of the inverse condemnation case. Without this essential finding that a taking occurred, the jury's award of $19,000.00 damages to Ruberto cannot stand. Likewise, the court's award of possession of the property to the City must be overturned.

### B. Damages for Lost Rental Income and Conspiracy

The second count of Ruberto's complaint against the City was for damages for lost rental income arising from the conspiratory efforts of various municipal departments of the City of Gary, whereby the City encouraged Ruberto's tenants to stop paying rent and to vacate the premises. Then, once the building was vacated, it was not adequately protected from vandalism and destruction, and it was stripped to a mere valueless shell, so that Ruberto was damaged by the loss of the value of her apartment building. The foundation of this action is the damage suffered by Ruberto because of the City's alleged wrongful acts. The fact of a conspiracy is in aggravation of this damage. *See Indianapolis Horse Patrol, Inc.* v. *Ward* (1966), 247 Ind. 519, 217 N.E.2d 626; *Dorsey Machine Co.* v. *McCaffrey* (1894), 139 Ind. 545, 38 N.E. 208; *Kuzma* v. *Kaczur* (1966), 138 Ind. App. 506, 215 N.E.2d 195.

We conclude that there is insufficient evidence to support the jury's verdict on this damages claim. The evidence presented at the jury trial on this claim, viewed in the light

most favorable to Ruberto, shows that Ruberto's property was in violation of minimum building code standards, that she received notices of the violations, and that she was not financially able to comply with Building Department requests to bring her property "up to code." After the 1964 urban renewal study, previously mentioned in this opinion, the Building Department and the Redevolpment Department disagreed upon how to handle the properties located within the proposed redevelopment area. The Building Department wanted no improvements because they planned to acquire the buildings in the future. The owners were caught in the middle of this running feud.

Mrs. Ruberto's property was condemned by the City of Gary as being "unfit for human habitation" in January 1969. The City sent out notices to the tenants to vacate the building; it relocated some of the tenants and told those who remained that they did not have to pay rent. In September 1969, the tenants "will not pay rent because of the condemnation signs." After the tenants left, the vandals took over. The structure was reduced to a mere shell.

A judgment for damages must rest upon some actionable wrong. In the present case, the evidence shows that when Ruberto's property was condemned, it was unsafe and unfit for human habitation. There was no hot water in any of the apartments; there were roaches in the apartments; the wiring was faulty and dangerous; there was inadequate drainage; the roof leaked profusely; the sanitary facilities in the apartments were either nonexistent or inadequate, etc. The City, by lawful process, placed condemned signs on the building. After the property was condemned, the City did not step beyond its bounds when it told the tenants to move out as soon as possible and, in the interim, to stop paying rent. The City properly attempted to inform the inhabitants that the building was unsafe. The City properly exercised its power to enforce regulations for

the protection of public health and safety. The City cannot be accountable for damages suffered as a result of the proper enforcement of such regulations.

There is no suggestion that the City owed Ruberto a special duty to provide police protection. The City cannot be liable for damages suffered as a result of its failure to supply general police protection. *Simpson's Food Fair, Inc.* v. *City of Evansville* (1971), 149 Ind. App. 387, 272 N.E.2d 871.

Again, the gist of Ruberto's complaint is that the Building Department condemned her property and encouraged the tenants to vacate, knowing that the property would become vacant and be vandalized, and knowing that, when the Redevelopment Department decided to condemn the property, it would only be required to compensate Ruberto for the value of the land. The evidence presented does not, however, "naturally lead . . . a rational, impartial mind to a conclusion for which there is a substantial reason, rather than one based upon mere guess, conjecture, surmise, possibility or speculation." The evidence leads, at most, to a mere suspicion that there may have been questionable motives behind the otherwise above-board actions of Building Department and Redevelopment Department officials. There is no evidence that various City departments, in fact, worked alone or together to deprive her of rents or to reduce the value of her property. The judgment of the trial court which awarded Ruberto $8,000.00 damages is not supported by the evidence.

Reversed and remanded with instructions to enter judgment consistent with this opinion.

Hoffman, J., concurs; Garrard, J., concurs with opinion.

## CONCURRING OPINION

GARRARD, J.—Appellee Ruberto apparently sought no administrative review of the findings or orders entered regarding her violations of the building code. Instead, it appears

that she acquiesced therein. *See,* IC 1971, 18-5-5-1 *et seq.* Accordingly, I concur with the majority.

NOTE.—Reported at 354 N.E.2d 786.