Charles E. FOREMAN and Soucie Construction Company, Inc., Appellants (Defendants Below),

v.

STATE of Indiana on the relation of the DEPARTMENT OF NATURAL RESOURCES, Appellee (Plaintiff Below).

No. 2–177A23.

Court of Appeals of Indiana, Fourth District.

March 29, 1979.

Arthur J. Sullivan, Ruth E. Myer, Steers, Sullivan, McNamar & Rogers, Indianapolis, for appellants.

Theodore L. Sendak, Atty. Gen. of Indiana, Wesley T. Wilson, Deputy Atty. Gen., Indianapolis, for appellee.

YOUNG, Judge.

Charles E. Foreman and Soucie Construction Company [appellants-defendants] appeal from a judgment of the trial court finding that they had unlawfully obstructed a floodway of the White River in Marion County.

The State of Indiana by the Department of Natural Resources [State] sought an injunction prohibiting appellants-defendants from making deposits on the *floodway* of the White River.[1] The State also sought removal of deposits previously made. Appellants-defendants answered and counterclaimed alleging that the State was claiming a *flood easement,* and as such the State was condemning the real estate in question. The trial court ordered the counterclaim of inverse condemnation stricken. Trial was had to the court with a judgment[2] entered for the State.

The issues presented for review framed by the appellants-defendants are as follows:

1. Whether or not the trial court erred in striking defendants' counterclaims in inverse condemnation?

2. Whether or not the court erred in rejecting defendants' argument that the Flood Control Act[3] is unconstitutional, at least as it has been applied in the present instance?

3. Whether or not the court erred in overruling the motion made by defendants' counsel for Involuntary Dismissal under Ind.Rules of Procedure, Trial Rule 41(B), which was made at the conclusion of plaintiff's case?

4. Whether the trial court's judgment ordering defendants "to restore east bank of said river (White River) on their property to condition it was in prior to construction of roadway" and "to cease depositing materials in floodway forthwith" is supported by sufficient evidence and not contrary to law?

## I.

Appellants argue that the State by seeking to enjoin appellants from depositing material in the floodway of White River is attempting to acquire lands for public use. Appellants' reason that this is a taking of a flood easement and as such they must be compensated in accord with the eminent domain power and procedures of the State.

The determination of whether there has been a taking requires an examination of the Flood Control Act [Act]. IC 1971, § 13–2–22–1 to –20 (Burns 1973). We are bound by the principle of statutory construction that the intent of the legislature is to be gleaned from the statute read as a whole, and not from any section or portion thereof taken piecemeal. Each part must be considered with reference to all other parts. *Walgreen Co. v. Gross Income Tax Division* (1947), 225 Ind. 418, 75 N.E.2d 784; *Ernst & Ernst v. Underwriters National Assurance Co.* (1978), Ind.App., 381 N.E.2d 897.

The sections relevant to this appeal are described or quoted below. Section 3 provides the following definitions:

"(8) 'Flood' or 'flood water' means the water of any river or stream in the state of Indiana or upon or adjoining any boundary-line of the state of Indiana, which is above the bank and/or outside the channel and banks of such river or stream; and also means the water of any lake which is above and outside the banks thereof;

1. Authorization is provided by statute. IC 1971, 13–2–22–20 (Burns Code Ed.).

2. "Court having heretofore taken this cause under advisement now finds for the Plaintiff and against the Defendant. The Court finds that the defendants have unlawfully obstructed the floodway of White River in Marion County, State of Indiana and the defendants are ordered to restore the east bank of said river on their property to the condition which it was in prior to the construction of the roadway and to cease depositing materials in the floodway, forthwith. Judgment accordingly."

3. IC 1971, 13–2–22–1 to –20.

(9) 'Flood flow' means all of the water of a river or stream that exceeds the within bank channel flow of the river or stream;

(10) 'Channel' means either the natural or artificial channel of a river or stream;

(11) 'Flood plains' means the area adjoining the river or stream, which has been or may be hereafter covered by flood water;

(12) 'Floodway' means the channel of a river or stream and those portions of the flood plains adjoining the channel, which are reasonably required to efficiently carry and discharge the flood water or flood flow of any river or stream;

(13) 'Commission floodway' means a floodway designated and established by order of the commission, fixing its length and landside limits;

(14) 'Flood control' means the prevention of floods, the control, regulation, diversion or confinement of flood or flood flow, and the protection therefrom, according to sound and accepted engineering practice, to minimize the extent of floods, and the death, damage and destruction caused thereby, and, all things incidental thereto or connected therewith;

(15) 'Flood easement' means an easement on property to be inundated or covered by water;"

Section 9 provides that when land is taken, it shall be approved by the attorney-general and taken in the name of the State. Section 10 provides the procedure for such a taking. Section 13 defines the nuisances which the commission has the power to seek to enjoin, specifically making it unlawful to make a deposit in or on any floodway. Further, § 20 gives the commission the power to maintain an action to enjoin any violation of the Act.

We cannot agree with appellant's *conclusion* that the State is seeking a flood easement. No easement was sought by the State in its complaint, nor was evidence at trial admitted to show that an easement was sought. Further, a careful reading of the definitions set out above distinguishes appellant's argument. A flood easement contemplates the taking of an interest in property so that an area may be covered or inundated by water. For example, if the State needs to regulate flowage by damming a river and thereby creating a lake or reservoir of some type, they would be required to take or condemn the land because they would be preventing any use by anyone other than themselves. Here they are not seeking an interest in land, but merely seeking to control the use of the land so as to prevent damage to the public. *See* zoning discussion *infra.* The Act also sets out two types of floodways. First, there is a floodway determined by what is reasonably required to efficiently carry and discharge the floodwater of any stream and second, there is a commission floodway which is designated by order of the commission establishing the dimensions thereof. The former must be considered applicable in this case because no commission floodway was designated concerning the area in controversy. Appellant correctly asserts that no evidence was admitted to show that the commission had established a floodway under IC 1971, 13–2–22–14. Such a showing was not required because of the differing types of floodways.

The legislature has further provided remedies to give effect to the Act. The two remedies which are involved in this matter are condemnation and maintenance of an action to enjoin or abate. Section 19 authorizes the State, through its power of eminent domain to purchase lands, easements, flood easements or other interest therein, or other property or right. Appellants-defendants seek the inverse application of this power. Section 13 declares it unlawful

"to erect, use or maintain in or on any floodway, a permanent abode or place of residence, or to erect, make, use or maintain any structure, obstruction, deposit or excavation in or on any floodway, or to suffer or permit any structure, obstruction, deposit or excavation to be erected, made, used or maintained in or on any floodway, which will adversely affect the efficiency of or unduly restrict the capac-

ity of the floodway or which, by virtue of its nature, design, method of construction, state of maintenance or physical condition, will constitute an unreasonable hazard to the safety of life or property, or result in unreasonably detrimental effects upon the fish, wildlife and botanical resources and the same are declared to be and to constitute public nuisances."

It further provides the remedy of enjoining the nuisance as follows:

"The commission shall have the power to commence, maintain and prosecute any appropriate action to enjoin or abate a nuisance, including any of the foregoing nuisances and any other nuisance which adversely affects flood control or the safety of life or property, or is unreasonably detrimental to fish, wildlife and botanical resources."

For the purpose of *removing or eliminating* any such structure, one remedy is condemnation as provided in this same section. We are of the opinion that this provides for structures existing prior to and at the time of the passage of the Act. The general power to seek injunctive relief by abatement as specifically provided by § 20 or § 13 was proper here.

Appellants-defendants argue that Foreman acquired the land prior to the passage of the Act and therefore the State must condemn the land in question. This contention is erroneous. The deposit in the floodway was not made until after the passage of the Act and then without the requisite permit. IC 1971, 13–2–22–13. The State sought and the trial court ordered that the area be restored to the condition as existed prior to the construction of the deposit-roadway, which was about 1970.

Another consideration examined in construing a statute is giving effect to the purpose or harm to be eliminated. *Public Service Co. v. Knox County Rural Electric Membership Corp.* (1976), Ind.App., 354 N.E.2d 301. The stated purpose of the Act

here is the prevention of damage by flooding. IC 1971, §13–2–22–2 (Burns Code Ed.). Clearly then the problem to be remedied is the creation of structures or deposits in the floodways, without a permit under § 13, which endanger the public. The only effective remedy is an injunction to compel removal of offending (within the Act) structures. To deny such power is an illogical interpretation of the Act. It places an insurmountable obstacle in the path of the State. Such an interpretation also places a tremendous financial burden on the State. Anyone who builds first without a permit and without the State's discovery, is then permitted to require condemnation of the way by the State.[4]

Looking at the Act as a whole, the provision of § 13 for removal of deposits and structures by eminent domain was directed at structures existing prior to the passage of the Act. Otherwise, the "race" situation described above, i. e. build first without a permit before the State discovers the activity, prevents effective enforcement of the Act. The trial court did not commit error by striking defendants' counterclaims in inverse condemnation.

## II.

Appellants-defendants contend that the Act is unconstitutional, at least in its application to them. They argue that there is a taking of their property without due process of law and as such violation of United States Constitution, Amendment XIV and Indiana Constitution, Article 1, § 21.

The government has the inherent power or "police power" to enact laws, within constitutional limits, to promote order, safety, health, morals, and the general welfare of society. *Bruck v. State ex rel. Money* (1950), 228 Ind. 189, 91 N.E.2d 349. Property rights are not absolute and may be restricted by legislation which constitutes a proper exercise of the State's police

---

4. If the appellants-defendants had followed the statutory scheme and applied for a permit, the construction might never have been started. There would be no expenditure of money by either the appellants-defendants in such an undertaking nor the State in a condemnation or removal action.

power. *Department of Financial Institutions v. Holt* (1952), 231 Ind. 293, 108 N.E.2d 629. Legislation is a proper exercise of the police power when the collective benefit to the general public outweighs the restraint imposed. *State Board of Barber Examiners v. Cloud* (1942), 220 Ind. 552, 44 N.E.2d 972. The methods or means used to protect the public order, health, morals, safety or welfare must have some reasonable relation to the purpose or end sought. *Bruck, supra.* We also note that every statute stands clothed with the presumption that it is constitutional, and such presumption continues until clearly overcome by a showing to the contrary. *Sidle v. Majors* (1976), 264 Ind. 206, 341 N.E.2d 763. The burden is upon the challenger to overcome the presumption of constitutionality. *Sidle, supra; Allen v. Pavach* (1975), 263 Ind. 574, 335 N.E.2d 219. A statute will not be declared unconstitutional until this presumption is rebutted by proof of its irrationality. *Chaffin v. Nicosia* (1974), 261 Ind. 698, 310 N.E.2d 867.

The purpose for the Act is declared by the legislature in § 2 as follows in pertinent part:

"It is hereby declared (a) that the loss of lives and property caused by floods, and the damage resulting therefrom, is a matter of deep concern to the state affecting the life, health and convenience of the people and the protection of property; that to prevent and limit floods all flood control works and structures, the alteration of natural or present watercourses of all rivers and streams in the state should be regulated, supervised and coordinated in design, construction and operation according to sound and accepted engineering practices so as to best control and minimize the extent of floods and reduce the height and violence thereof; (b) that the channels and that portion of the flood plains of rivers and streams, which are the floodways, should not be inhabited and should be kept free and clear of interference or obstructions which will cause any undue restriction of the capacity of the floodways."

The means and methods used to reach this end are set out in §§ 6 thru 20, and relevant sections to this appeal are discussed in Part I of this opinion.

■ It is clear that the purpose of the Act and those means used to reach the purpose are rationally related and therefore within the police power of the State to promote order, safety, health and welfare of society. An uncontrolled river may at flood state become a destroyer of life and property. Controlling the use of rivers and adjoining property is of great importance to the welfare of society.

■ Appellants-defendants argue that the Act is unconstitutional as applied to them citing *City of Evansville v. Reis Tire Sales, Inc.* (1975), Ind.App., 333 N.E.2d 800. In *City of Evansville* the Court of Appeals held a zoning ordinance unconstitutional because it restricted the use of property to an exclusive use for which the property could not reasonably be used. 333 N.E.2d at 802. In the case at bar, the trial court did not restrict the land to an exclusive use. The court only prevents the making of deposits and then only in that portion of their property which interferred with the floodway. This does *not* so burden the appellant's property to become a taking of land for the public use. Control of the use of property, by zoning or otherwise, does not always amount to a taking. If all reasonable uses are prevented, the restriction would then be unconstitutional. *City of Evansville, supra.* Such is not the case here.

■ The constitutional prohibition against taking property without just compensation, due process, does not restrain the legislature in its exercise of police power but applies only to the taking of private property under the power of eminent domain. *Buckler v. Hilt* (1936), 209 Ind. 541, 200 N.E. 219. Acts done in the proper exercise of governmental powers requiring adherence to regulations and statutes which promotes order, safety, health and general welfare do not amount to a taking. *State v. Ensley* (1960), 240 Ind. 472, 164 N.E.2d 342; *City of Gary By and Through Department of Redevelopment v. Ruberto* (1976), Ind.App., 354 N.E.2d 786. A taking in the constitutional sense is a relative term and

not all damage to property amounts to a taking. Before property is taken in a constitutional sense, there must be a substantial interference with the owner's use and enjoyment of the *specific* property taken. The determination of whether interference is substantial is a factual question to be resolved by the trier of fact. *Indiana & Michigan Electric Co. v. Stevenson* (1977), Ind.App., 363 N.E.2d 1254. Controlling the use of the floodway is not such a substantial interference. The trial court's judgment was correct.

The proper control of rivers involves the control of adjoining property in the floodway. The police power of the State controls the use of the property because uncontrolled use would be harmful to the general welfare. Eminent domain provides for a taking of the property because it would be useful to the public. The distinction between control of use for public welfare and taking because it is useful to the public is important in determining whether it is a police power or an eminent domain taking.

We are of the opinion that this is a control of use and not a taking and therefore is not unconstitutional, even as applied to appellants-defendants. The Department is not seeking to curtail appellants-defendants' sand and gravel operation as they seem to believe.[5] No development of land other than the floodway is prevented by this case.[6]

### III.

■ The record before us discloses that following the denial of appellants-defend-

ants' Ind.Rules of Procedure, Trial Rule 41(B) motion for involuntary dismissal, they proceeded to present their own evidence. Therefore, any error committed by the trial court's denial of their motion is waived. *Burger Man, Inc. v. Jordan Paper Product, Inc.* (1976), Ind.App., 352 N.E.2d 821.

■ In their brief appellants seek to argue as error the denial of the same motion made again at the close of all the evidence. This too is waived for failure to include it in their motion to correct errors. Ind.Rules of Procedure, Trial Rule 59(G).

### IV.

In their motion to correct errors, appellants argue that the judgment is not supported by sufficient evidence and is therefore contrary to law. This argument is also made in their brief with the additional statement that the order itself is insufficient because they cannot learn from it what they are to remove in order to comply with the judgment order for restoration of the east bank.

■ Appellants complain that the injunction issued here is too general in its terms to permit compliance. This issue was not raised in their Motion to Correct Errors and is waived. Ind.Rules of Procedure, Trial Rule 59(G). Further, the appellants-defendants objected to questioning on redirect about the very problem for which they are now seeking relief.[7] Finally, we are of the

---

5. The State, by its expert engineer during cross-examination, made the following statement about curtailment of gravel operations:

   "The Department has never criticized their operations or anything in there from the gravel stand point. They were operating prior to 1945 and have continued to operate the gravel operation for stock piling the gravel, they're mining, they're filling, all these types of things. We have talked to Standard Materials and I have done this myself on occasion, indicating that it would be nice, that big bank line up there, if they could sell that material, you know, that type of thing and get some money out of it, it would enhance the river. But, we're not talking about [that.]"

6. Any future "development" should comply with the statutory framework of application for permit under IC 13–2–22–13.

7. "*RE DIRECT EXAMINATION: QUESTIONS BY MR. WENNING:*

   "Q. Mr. Wenning, we nailed down more exactly what in dimensions we're trying to have removed as far as length and depth?

   "A. May I have the exhibit there? The area that was filled is approximately 725 feet, that's measured from the center line of road 100 or 86th Street, north. Portions of that area were filled a depth of—

   "*Mr. Sullivan*: Your Honor, I don't think this is a proper re direct. I didn't ask him any

opinion that there is sufficient information available to appellants-defendants so that compliance with the judgment may be had. If a problem should occur, the proper course to take would be an application to the trial court which rendered the judgment. Courts of this State have the inherent power to entertain actions to determine whether a judgment has been carried out and satisfied. *Wilson v. Wilson* (1976), Ind. App., 349 N.E.2d 277.

■ We now turn to the sufficiency of the evidence to support the judgment. Appellants-defendants did preserve this allegation for review. In reviewing the sufficiency of evidence to support the judgment of the trial court, we will neither weigh evidence nor judge the credibility of witnesses, but will affirm the judgment if supported by evidence of probative value. *Jos. Schlitz Brewing Co. v. Central Beverage Co.* (1977), Ind.App., 359 N.E.2d 566. Our role is limited to an examination of the evidence most favorable to the judgment of the trial court and the reasonable inferences therefrom. *State Farm Mutual Automobile Insurance Co. v. Shuman* (1977), Ind.App., 370 N.E.2d 941.

In the case at bar, the State has the power to maintain an action to enjoin or abate a nuisance. As stated above, § 13 defines nuisance for purposes of this Act to include maintenance of any deposit in or on any floodway which would adversely affect the efficiency of or unduly restrict the capacity of the floodway. The record is re-

plete with statements, pictures and maps depicting a deposit, levy or roadway in the floodway. As discussed above, there are two types of floodways; the relevant type here is defined by § 3(12) and *not* § 3(13) and § 14 as argued by appellants-defendants. No evidence of a commission order as required by § 14 was necessary in this case. There is also evidence in the record that removal of the deposit would abate the nuisance, and increase the efficiency and not restrict the capacity of the floodway.

■ Further there was testimony by an expert engineer from Purdue University that the deposit was adversely affecting the floodway and unduly restricting the flow. Although the trial court may weigh credibility and testimony by an expert, the testimony of an expert is sufficient evidence from which the trier of fact may reach a conclusion. *City of Terre Haute v. Terre Haute Water Works Corp.* (1962), 133 Ind. App. 232, 180 N.E.2d 110.

For the reasons above we interpret the Act to give the power to maintain an action to enjoin or abate a defined nuisance. Such is a constitutional power of the State and the power is constitutional as applied to appellants-defendants. There was also sufficient evidence for the trial court's judgment.

Affirmed.

CHIPMAN, P. J., and MILLER, J., concur.

questions relative to that exhibit or anything like that.
"*Mr. Thompson*: You did, you asked him how much fill from the bridge back was in dimensions we were talking about. I'm going right back to it.
"*The Court*: I think it was raised. You may go into it.
"A. It's filled over an area of 725 feet and 16 feet deep now, as depicted by the cross section, this isn't as solid all that, part of that was in there before, and we'll not be asking that to be removed.
"Q. So, what are we asking then to be removed?
"A. Well, about two thousand, six hundred (2,600) square feet, about three thousand (3,000) square feet.

"Q. And, the dimensions length wise, to the best of your knowledge?
"A. It was sone over a distance of 725 feet, the actual filling has been only part of that which is at—
"*Mr. Sullivan*: Your Honor, I never asked him any questions relative to this. I only talked about debris of the bridge.
"*The Court*: You can rehabilitate your witness, but I don't think you can go into new matter and I think that's what you're getting into, Mr. Thompson. That will be sustained.
"Q. Are we capable of directing any kind of operation that may be ordered as far as directing removal?
"A. We could stake it."