Paul ZAHM, Jr., Appellant (Plaintiff),

v.

R.B. PEARE, Health Officer of Huntington County, et al.; Indiana State Board of Health, Appellees (Defendants).

No. 2–1284–A–362.

Court of Appeals of Indiana, Second District.

Dec. 30, 1985.

Ordered Published Jan. 6, 1987.

Stanley H. Matheny, John W. Bailey, Matheny, Michael, Hahn & Bailey, Huntington, for appellant.

James W. Bowers, Palmer, Bowers & Brewer, Huntington, for Dr. R.B. Peare, Health Officer of Huntington County, Ind., et al.

Linley E. Pearson, Atty. Gen., Daniel P. Miller, Deputy Atty. Gen., Indianapolis, for Indiana State Bd. of Health.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Plaintiff-appellant Paul Zahm, Jr. (Zahm), a real estate developer, appeals from a judgment in favor of defendants-appellees R.B. Peare, M.D. (Peare), Health Officer of Huntington County; members of the Huntington County Board of Health (County Board of Health); and the Indiana State Board of Health (State Board of Health) [hereinafter collectively referred to as the Appellees] upon his complaint for a declaratory judgment. Zahm claims the trial court erred in finding that contagious diseases could filter through a sand filter sewage disposal system; in concluding that the denial of a sewage permit for a sand filter system was neither an improper exercise of police power, an abuse of discretion, a taking of property without just compensation, nor an unconstitutional deprivation of a vested right; and in failing to find Zahm's property exempt from State residential sewage disposal regulations.

We affirm.

## FACTS

The facts most favorable to the trial court's judgment reveal that on December 15, 1958, the Huntington County Board of Commissioners (County Commissioners) adopted a subdivision control ordinance that required a subdivider to provide a subdivision with either a public sewer system or "septic tanks with absorption systems or seepage pits, all constructed according to the minimum requirements of the State Board of Health." *Record* at 301. In 1959, Zahm filed a plat for Zahm Lake, a residential subdivision, with the County Commissioners. The plat shows forty-six lots with streets and a lake, but does not specify the type of sewage disposal system to be installed. The restrictions filed with the plat require the owner of each lot to "provide or construct an adequate septic tank sewage disposal system that meets the requirements and approval of the Indiana State Board of Health and all sewage, wash waters and disposable waste shall flow into said disposable [sic] system." *Record* at 297. The County Commissioners approved the plat on November 9, 1959 with the following limitations: "Dedications contained herein are hereby accepted by Huntington County, but construction or maintenance is expressly not accepted." *Record* at 294.

Construction of Zahm Lake began in 1960. Between 1969 and 1971, thirty-two homes were built in Zahm Lake with subsurface sand filter sewage disposal systems. In 1965, the County Board of Health was established. That same year, the County Commissioners adopted Huntington County, In., Ordinance No. 1–1965, Private Sewage Disposal Systems, which prohibited the installation of sand filter disposal systems in Huntington County. Ordinance 1–1965 incorporated by reference Bulletin S.E. 8 of the State Board of Health. According to Durland Patterson (Patterson), a State Board of Health employee responsible for overseeing the residential on-site sewage disposal system, the 1951 edition of Bulletin S.E. 8 recommended, in essence, that "unless sewage is discharged to a municipal sewer going to a municipal treatment plant or a public treatment plant, all the sewage from an individual's residence should be retained on the lot in an on-site system such as an absorption field." *Record* at 473. Patterson testified that, in contrast with on-site systems, sand filter systems discharge sewage effluent off the lot and into nearby ditches and streams. Sewage flows out of the house into a septic tank. From the septic tank the effluent flows through a pipe to the top of a sand bed. A pipe at the bottom of the sand bed collects the effluent as it is filtered through the sand and carries the contaminated effluent off the property into nearby ditches and streams. Thus, off-site discharge of sewage effluent contributes to water pollution and to the spread of contagious diseases. Despite the adoption of Ordinance 1–1965, the County Board of Health issued permits for sand filter systems to Zahm and other developers from 1965 until 1971. Late 1971, Peare, the County Health Officer since 1969, implemented a change in policy to bring the county's practices in line with regulations of both the State Board of Health and the Stream Pollution Control Board which prohibited the "discharge of sewage effluent from septic tanks to a surface or subsurface sand filter with discharge to a stream." *Record* at 333. The county sanitarian, DeVon Blackburn (Blackburn), informed Zahm and other builders and developers in Huntington County of the policy change. The County Board of Health approved no sand filter disposal systems after October, 1971.

On April 17, 1974, Zahm applied to the County Board of Health for a permit to install a subsurface sand filter sewage disposal system on Lot 30 in Zahm Lake. Blackburn denied the permit pursuant to the changed policy. Zahm sought a declaratory judgment that the denial of the permit was an unconstitutional taking of his property without just compensation. After a bench trial, the trial court entered findings of fact, summarized above, and the following conclusions of law:

"1. Enforcement of Ordinance 1–1965 is a proper exercise of the police powers of Huntington County, Indiana, and enforcement of Indiana State Board of Health Bulletin, S.E. 8 is a proper exercise of the police powers of the State of Indiana.

2. That neither the Huntington County Board of Health, nor the health officer, nor the county sanitarian, acted in an arbitrary or capricious manner in denying plaintiff's request for a sand filter sewage permit for Lot Number 30 in Zahm Lake Addition.

3. That there was no taking of property from the plaintiff within the meaning of the Constitution of the United States or of the State of Indiana.

4. Plaintiff has not shown by a preponderance of the evidence that there was an abuse of discretion in denying his application for a permit to install a subsurface, sand filter sewage disposal system on Lot 30 in Zahm Lake Subdivision. Judgment for defendants and against plaintiff."

*Record* at 246–47. This appeal ensued.

### ISSUES

Zahm presents six issues, as restated, for our consideration:

1. Is the trial court's finding of fact that multiple contagious diseases could filter through a sand filter sewage disposal system contrary to the weight of the evidence?

2. Is the trial court's conclusion that the denial of a sewage permit for Lot 30 was a proper exercise of police power clearly erroneous?

3. Did the trial court err in concluding that a denial of a sewage permit for Lot 30 was not arbitrary and capricious or an abuse of discretion?

4. Is the trial court's conclusion that there was no unconstitutional taking of property without just compensation contrary to law?

5. Did the denial of a sewage permit deprive Zahm of any vested right?

6. Is Lot 30 exempt from State residential sewage disposal regulations by virtue of 410 I.A.C. 6–8–12(C) (1984)?

### DECISION

◼ *ISSUE ONE*—Is the trial court's finding of fact that multiple contagious diseases could filter through a sand filter sewage disposal system contrary to the weight of the evidence?

*PARTIES' CONTENTIONS*—Zahm contends that the trial court's finding of fact regarding the spread of contagious diseases through a sand filter sewage disposal system is contrary to the evidence since there was no evidence of disease emitted from the sand filter systems at Zahm Lake.

The Appellees respond that there is ample evidence that a sand filter system can carry contagious diseases to a stream.

*CONCLUSION*—The trial court's finding of fact that multiple contagious diseases could filter through a sand filter sewage disposal system is not contrary to the weight of the evidence.

The trial court found the "[m]ultiple contagious diseases could filter through a sand filter sewage disposal system and be discharged into the waterways of the county." *Record* at 246. In reviewing the sufficiency of the evidence supporting a trial court's findings of fact, we may neither reweigh the evidence nor reassess the credibility of witnesses; the trial court's findings will not be set aside unless they are clearly erroneous. *Evans v. National Life Accident Ins. Co.* (1984), Ind.App., 467 N.E.2d 1216.

The record is replete with expert testimony to support the trial court's findings. Peare testified, "Sand is not a proper filter to filter out viruses. [I]f somebody in a house has got hepatitis[,] kids wading in that stream and diving in and getting the water in their mouth [sic] could very easily pick up hepatitis." *Record* at 425. Blackburn testified that the effluent is "contaminated water. It is unclean and people carrying diseases can put it out through

the sewage." *Record* at 383. Patterson testified that if a family with multiple contagious diseases resided in a house with a sand filter system the potential for the spread of waterborne diseases would increase. *Record* at 472. The expert testimony of Peare, Blackburn, and Patterson amply supports the trial court's finding of fact.

*ISSUE TWO*—Is the trial court's conclusion that the denial of a sewage permit for Lot 30 was a proper exercise of police power clearly erroneous?

*PARTIES' CONTENTIONS*—Zahm argues that the denial of the sewage permit for Lot 30 was not a proper exercise of police power because there was no evidence showing that the sand filter system was dangerous to the public health.

The Appellees respond that the denial of the sewage permit was a proper exercise of police power since a municipality can control the disposal of sewage.

*CONCLUSION*—The trial court's conclusion that the denial of a sewage permit for Lot 30 was a proper exercise of police power is not clearly erroneous.

■■■ The State has the inherent power to enact laws, within constitutional limits, to promote order, safety, health, morals, and the general welfare of society. *Foreman v. State ex rel. Department of Natural Resources* (1979), 180 Ind.App. 94, 387 N.E.2d 455, *trans. denied.* Property rights are not absolute and may be restricted by government action which constitutes a proper exercise of police power. *Id.* Government action constitutes a proper exercise of the police power when the collective benefit to the general public outweighs the restraint imposed. *Id.* The means used to protect the public order, health, morals, safety, or welfare must have some reasonable relation to the end sought. *Id.*

■■■ The power of a municipality to control the disposal of sewage is past dispute. *Brandel v. Civil City of Lawrenceburg* (1967), 249 Ind. 47, 230 N.E.2d 778. The trial court found that sand filter systems could contribute to the spread of disease in the county. *Record* at 246. The prohibition of sand filter systems prevents the spread of contagious disease from house to house through untreated sewage effluent. Thus, enforcement of Ordinance 1-1965 and state health regulations is reasonably related to the protection of the public health. Moreover, the collective benefit to the general public of preventing the spread of disease outweighs the restraint on Zahm's use of his property. The County Board of Health did not forbid Zahm to develop the lot; it simply forbade him to install a sewage system that violates the regulations of the State Board of Health and pollutes the waterways of the county. Therefore, we cannot say the trial court erred in concluding that denial of a sewage permit for Lot 30 was a proper exercise of the police power.

■■■ *ISSUE THREE*—Did the trial court err in concluding that a denial of a sewage permit for Lot 30 was not arbitrary and capricious or an abuse of discretion?

*PARTIES' CONTENTIONS*—Zahm contends that the enforcement of the County Board of Health's new policy was arbitrary and capricious because installation of sand filter sewage disposal systems for other lots had been approved previously.

The Appellees respond that the prohibition against sand filter systems was consistently enforced.

*CONCLUSION*—The trial court did not err in concluding that the denial of a sewage permit for Lot 30 was not arbitrary and capricious, or an abuse of discretion.

"An arbitrary and capricious administrative act is one which is willful and unreasonable, without consideration and in disregard of facts or circumstances in the case." *Metropolitan School Dist. v. Mason* (1983), Ind.App., 451 N.E.2d 349, 354, *trans. denied.* In 1971, after consultation with the city attorney and careful consideration of the law supporting the proposed change in policy and its impact on public health, Peare initiated a change in the sewage permit policy of the County Board of Health. Both state and local law mandated

the change. Under Peare's direction, the County Board of Health gave notice of the change to Zahm and to other builders and developers in Huntington County. The new policy was consistently enforced: the trial court found that "[n]o sand filter sewage disposal systems have been approved or authorized in Huntington County since October 1971." *Record* at 244. We cannot say that Peare's act was "willful and unreasonable, without consideration and in disregard of facts or circumstances in the case." *Mason, supra,* at 354.

■ *ISSUE FOUR*—Is the trial court's conclusion that there was no unconstitutional taking of property without just compensation contrary to law?

*PARTIES' CONTENTIONS*—Zahm argues that the County Board of Health's denial of the sewage permit constituted an unconstitutional taking of property because he was precluded from developing the land and there were no other economically viable uses for the property.

The Appellees argue that there is no taking of property because the sewage disposal regulations advance legitimate state interests.

*CONCLUSION*—The trial court's conclusion that there was no unconstitutional taking of property without just compensation is not contrary to law.

"Acts done in the proper exercise of governmental powers requiring adherence to regulations and statutes which promotes order, safety, health and general welfare do not amount to a taking. *State v. Ensley* (1960), 240 Ind. 472, 164 N.E.2d 342; *City of Gary By and Through Department of Redevelopment v. Ruberto* (1976), [171] Ind.App. [1], 354 N.E.2d 786."

*Foreman, supra,* 180 Ind.App. at 102, 387 N.E.2d at 461. Ordinance 1–1965 and the state residential sewage disposal regulations promote the public health by preventing contamination of county waterways by sewage effluent from sand filter systems. "The police power of the State controls the use of the property because uncontrolled use would be harmful to the general wel-

fare." *Id.* at 103; 387 N.E.2d at 461. The County Board of Health properly exercised its police power when it denied Zahm a permit, thereby requiring him to adhere to state health regulations. *See Brandel, supra.* Denial of the permit was merely a control of Zahm's use of the property, not a taking in the constitutional sense. Therefore, the trial court's conclusion is not contrary to law.

■ *ISSUE FIVE*—Did the denial of a sewage permit deprive Zahm of any vested right?

*PARTIES' CONTENTIONS*—Zahm urges us to apply to his situation the rule that a municipality may not change an ordinance that affects any vested rights lawfully acquired under the ordinance sought to be modified.

The Appellees respond that Zahm acquired no vested rights.

*CONCLUSION*—The denial of a sewage permit did not deprive Zahm of any vested right.

Both the subdivision control ordinance adopted in 1958 and the restrictions Zahm himself filed with the plat, required installation of sewage systems which would meet the requirements of the State Board of Health. State Board of Health regulations have prohibited sand filter systems since at least 1951. Therefore, Zahm could not have "lawfully acquired" a vested right to install sand filter systems in the remaining lots of Zahm Lake. *Foley v. Consolidated City of Indianapolis* (1981), Ind. App., 421 N.E.2d 1160, *trans. denied.* "[V]ested rights are not acquired by reason of the nonenforcement of a valid staute [sic]." 16A *C.J.S. Constitutional Law* § 228 (1984).

Moreover, the denial of a sewage permit did not deprive Zahm of any vested right he may have had to develop Lot 30 according to the plat approved in 1959. The plat did not specify the type of sewage disposal system to be installed. Zahm remains free to develop his land according to the plat so long as he does so in compliance with state and local health regulations.

■ *ISSUE SIX*—Is Lot 30 exempt from state residential sewage disposal regulations by virtue of 410 I.A.C. 6–8–12(C)(1984).

*PARTIES' CONTENTIONS*—Zahm contends that 410 I.A.C. 6–8–12(C)(1984) specifically exempts subdivisions designed to utilize residential sewage disposal systems that treat the sewage on-site.

Appellees argue that 410 I.A.C. 6–8–12(C) is inapplicable because sand filter sewage disposal systems are off-site sewage discharge systems.

*CONCLUSION*—Lot 30 is not exempt from state residential sewage disposal regulations by virtue of 410 I.A.C. 6–8–12(C).

As the trial court's findings of fact do not specifically address the applicability of. 410 I.A.C. 6–8–12(C), the judgment controls and will be upheld if sustainable on any theory not contrary to the trial court's findings. *Best v. Best* (1984), Ind.App., 470 N.E.2d 84. 410 I.A.C. 6–8–12(C) provides as follows: "Subdivisions designed to utilize *on-site* residential sewage disposal systems, the plans for which were duly approved, in writing, by the administrative authority prior to December 18, 1977, are exempt from the provisions of this regulation relating to the *design and installation* of residential sewage disposal systems." (Emphasis supplied). 410 I.A.C. 6–8–2(f)(1984) defines residential sewage disposal system to mean *"all equipment and devices necessary for* proper conduction, collection, storage, treatment, and *on-site disposal of sewage* from a one- or two-family dwelling. Included within but not limited to the scope of this definition are building sewers, septic tanks, subsurface absorption fields, and privy vaults." (Emphasis supplied). Sand filter systems clearly are not within the scope of this definition, even though such systems employ septic tanks for collection and storage of sewage. The definition expressly limits the protection of 410 I.A.C. 6–8–12(C) to "all equipment and devices necessary for … *on-site disposal of sewage."* In a sand filter system, pipes leading from the septic tank conduct the contaminated effluent to

the top of a sand bed. A pipe at the bottom of the sand bed collects the effluent as it is filtered through the sand and conducts it, untreated, *off* the site and into nearby ditches and streams. Thus, sand filter systems dispose of sewage off the site. Patterson, the author of 410 I.A.C. 6–8–12(C), testified that sand filter systems are not included within the definition of on-site residential sewage disposal systems precisely because sand filter systems discharge sewage effluent off the site.

Moreover, 410 I.A.C. 6–8–12(C) exempts only those systems, "the plans for which were duly approved, in writing, by the administrative authority prior to December 18, 1977." 410 I.A.C. 6–8–2(a)(1984) defines administrative authority to mean "the local board of health." The County Board of Health never approved, in writing or otherwise, the plans for a sand filter system for Lot 30. Therefore, Lot 30 is not entitled to the protection of 410 I.A.C. 6–8–12(C).

We observe, in addition, that 410 I.A.C. 6–8–12(C) exempts designated systems *only* from "the provisions of this regulation relating to the *design* and *installation* of residential sewage disposal systems." (Emphasis supplied). Nowhere does the regulation exempt any system from the *general* requirements of 410 I.A.C. 6–8–3 (1984), which provides as follows:

"No person shall throw, run, drain, seep, or otherwise dispose into any of the streams or waters of this state, or cause, permit, or suffer to be thrown, run, drained, allowed to seep or otherwise disposed into such waters, any organic or inorganic matter that shall cause or contribute to a polluted condition of such waters unless a permit for such disposal has been obtained as authorized by IC 13–1–3 or IC 13–7.

(B) The design, construction, installation, location, maintenance and operation of residential sewage disposal systems shall comply with the provisions of this regulation."

*See also* Ind. Code 13–7–4–1. The sand filter system proposed for Lot 30 would

allow contaminated organic matter, that is, untreated sewage effluent, to drain into the streams of this state in violation of the express provisions of state law. Therefore, the trial court reasonably could have concluded that Lot 30 was not exempt from state and residential sewage disposal regulations by virtue of 410 I.A.C. 6–8–12(C).

Judgment affirmed.

SHIELDS, J. concurs.

SULLIVAN, J. concurs with separate opinion.

SULLIVAN, Judge, concurring.

Although I concur, I believe that the majority opinion mistakenly assumes that if effluent seeps from the particular property concerned, the sewage disposal system cannot be considered an on-site system.

Sewage and effluent are not the same thing. Effluent is the result of on-site sewage disposal. It is quite clear that the Administrative Code contemplates the production of effluent from a septic tank, and that the effluent will be discharged for direct absorption into the soil. *See* 410 IAC 6–8–2 (j) in combination with 410 IAC 6–8–2 (n).

It may well be that the drafter of the regulations did not intend that pre-December 1977 sand filtration systems used in conjunction with a septic tank be exempted, but the regulations above cited do not reflect that intent.

I concur because the overriding public health considerations of 410 IAC 6–8–3 which prohibit the contamination and pollution of streams and ditches must take precedence over the generalized "grandfather" clause of 410 IAC 6–8–12 (C).